THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISAAC WEBB, Appellant.

Second Department, June 4, 1979

## APPEARANCES OF COUNSEL

*William E. Hellerstein* and *Isaac Webb, pro se (Asher H. Miller* of counsel), for appellant.

*Eugene Gold, District Attorney (Michael J. Halberstam* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J. P.

In my opinion the cumulative effect of untoward actions on the part of the prosecutor during the trial deprived defendant of his constitutional and fundamental right to a fair trial. Accordingly, the judgment of conviction should be reversed and the action remanded for a new trial.

Under Indictment No. 2746/76, defendant was charged with committing the crime of criminal sale of a controlled substance in the third degree, and related offenses, on August 24, 1976, while acting in concert with another. This indictment was consolidated with Indictment No. 2747/76, which charged that defendant had acted in concert with codefendant John Sawyer to commit, *inter alia,* criminal sale of a controlled substance in the second degree on August 27, 1976, and in the third degree on August 13, 1976. Indictment No. 159/77, which alleged that on September 3, 1976 defendant committed the crimes of criminal possession of a controlled substance in the first degree, criminally using drug paraphernalia in the second degree, and criminally possessing a hypodermic instrument, was also consolidated with Indictment No. 2746/76.

At trial testimony was adduced from undercover Police Officer Bobby Jones that he made three purchases of heroin from John Sawyer and defendant (who were jointly involved in each sale) on August 13, August 24, and August 27, 1976, in front of defendant's home located at 745 Jefferson Avenue, Brooklyn, New York. The testimony of Jones with respect to the sales by defendant and Sawyer was corroborated by the testimony of the backup team, Officers McGeown, Nekiunas and Brown. They also testified as to the seizure of drugs and drug paraphernalia from defendant's apartment on September 3, 1976 pursuant to a search warrant, and as to a statement made by defendant. Defendant, testifying in his own behalf, denied involvement in the trafficking of narcotics, although he admitted knowing John Sawyer as a person who occasionally "play[ed] his numbers with [him]".

Defendant was acquitted of all charges relating to August 24, 1976. However, he was convicted of criminal sale of a controlled substance on August 13 and August 27, 1976, and of criminal possession of a controlled substance in the first

degree, and of criminally possessing drug paraphernalia and a hypodermic instrument on September 3, 1976.

During cross-examination of defendant, the prosecutor, over defense counsel's objections, time and time again improperly required defendant to say whether the police officers who testified for the People had lied during their testimony (see *People v Goggins,* 64 AD2d 717).

Furthermore, during the prosecutor's summation, partially in response to remarks by defense counsel during his summation that the People's police witnesses had lied and after referring to the statements impermissibly elicited from defendant that the officers had lied during their testimony, the prosecutor made the following intemperate remarks:

"But he [appellant] knows the police officers lied. It's always the same thing. You can go into any courtroom in this building on the seventh floor, the fifth floor, anywhere, and it's all the same. The police officers lied. They were out to get poor little old me. * * *

"Now, let's talk a little about the question of credibility. Defense counsel was right on this point: The police officers have a lot to lose by coming in here and lying. The least thing they have to lose is their pensions because, if they lie and it's proven, they go to jail, and they don't cop pleas. You don't hear about a police officer indicted and plea bargaining taking place. They don't plea bargain their way down. They lose their jobs, they lose their pensions, and they go to jail, no ifs, ands, or buts. And what would be the motive? What would be the motive for their lying? Was there any motive for lying?

"Now, the undercover officer, did he lie? Is he supposed to have produced all this stuff and had said that it belonged to that man? And Mr. Hill said, I can't tell you the motive. Well, that's not enough. That's really not enough. You have to show a motive. You have to tell us why these officers would lie. Why would they want to risk everything they have to risk just to get this man?"

Such remarks by the prosecutor during summation compounded the prejudicial effect of his cross-examination of defendant on whether the police officers had lied during their testimony. They also constituted improper bolstering of the truthfulness of the People's witnesses and the interjection of matters extraneous to the case, all possibly tending to prejudice or mislead the jury (see *People v Posner,* 273 NY 184; *People v Tassiello,* 300 NY 425, 430-431).

The prosecutor also exceeded the bounds of propriety by advising the jury that the defense would have to show a motive why the officers would lie. Besides usurping the court's function of instructing the jury as to the law, the prosecutor, in making such statement, was in effect instructing the jury that the burden of proof had shifted to the defense after the testimony of the police officers had concluded (cf. *People v Pabon,* 48 AD2d 862). He also mistakenly intimated during his summation that it was unnecessary for him to call still another police officer to the stand because such officer's testimony would have been repetitive and supportive of the People's case (see *People v Wright,* 41 NY2d 172, 174, 176).

Other improper comments made by the prosecutor were that defendant had not called other people living in the same house as he because they would not lie for him (cf. *People v Cwikla,* 45 AD2d 584) and that it was "not worth [the complainant's] life * * * to pass" along to the defendant the name and address of such person. The only inference that could be drawn from the latter remark is that defendant would have killed the complainant or have had him killed (see *People v Jackson,* 40 AD2d 1006; *People v Roberts,* 26 AD2d 655).

Therefore, it is patently apparent that we are not faced with an isolated instance of prosecutorial indiscretion but, rather, with remarks manifestly calculated to bolster the believability of the People's police witnesses, and, by innuendo, cast doubt upon defendant's truthfulness and character. The repetitive nature of the prosecutor's improper actions and the combination of the errors discussed deprived defendant of a fair trial and compel that a new trial be ordered (cf. *People v Goggins,* 64 AD2d 717, *supra).*

SUOZZI, GULOTTA and MARTUSCELLO, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered October 20, 1977, reversed, on the law and as a matter of discretion in the interest of justice, and a new trial ordered.