THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES GRICE, Appellant.

Fourth Department, April 12, 1984

### APPEARANCES OF COUNSEL

*Edward J. Nowak, Public Defender (Susan Cable* of counsel), for appellant.

*Howard R. Relin, District Attorney (Melvin Bressler* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

The principal question presented on this appeal is whether the misconduct of the prosecutor deprived defendant of his fundamental right to a fair trial. The record amply demonstrates that the prosecutor's attitude and tactics throughout the trial were improper. Defendant's conviction of murder in the second degree must be reversed and a new trial granted.

Defendant was accused of killing Lewis Phillips, Sr., with a shotgun during a fight. The People claimed the shooting was intentional and in furtherance of defendant's plan to steal handguns and money from the decedent. Defendant maintained that the shooting was accidental. He claimed that when he went to the decedent's house to reclaim some hunting dogs he had boarded there the decedent refused to release the dogs and threatened defendant with a shotgun. A fight ensued. As defendant wrestled the

gun away, the decedent fell backward and the gun discharged accidentally, striking the decedent in the back. Defendant claimed that the deer slug ricocheted off a door before striking the decedent.

A key issue at trial was the path of the fatal bullet. The evidence was wholly circumstantial. The People relied upon a firearms examiner who testified that the deer slug was fired from shoulder level and passed directly through a door before striking the decedent. Defense counsel objected, without success, on the ground that the witness was qualified as an expert only in firearms not ballistics. The People also were permitted, over objection, to elicit testimony from a police investigator concerning his attempt to re-enact the fatal shooting. The officer concluded that the decedent was standing with his back to the defendant when he was shot, despite the fact that a medical examiner had previously testified it was impossible to determine the position of decedent's body at the time the bullet entered.

Although at times, the trial tactics of defense counsel were less than exemplary, they did not justify the prosecutor's departure from the obligations of the sensitive role he plays (*People v Galloway,* 54 NY2d 396, 398-399). Here, the trial was permeated from beginning to end by the prejudicial conduct of the prosecutor. He repeatedly asked improper questions, disregarded the trial court's rulings, intentionally made unwarranted asides, denigrated defendant and defense counsel in the presence of the jury, improperly vouched for the credibility of the People's witnesses and suggested that in order for the jury to acquit defendant it would have to find every prosecution witness a liar. In sum, defendant's trial was an unfortunate example of unfairness and unaccepted tactics which cannot be tolerated (*People v Alicea,* 37 NY2d 601, 605). It is unnecessary to itemize all the incidents of prosecutorial misconduct. We cite only a few examples to illustrate the reprehensible manner in which the prosecutor tried this case.

The prosecutor deliberately distorted and exploited defendant's role as a former police informant in an effort to persuade the jury that defendant was a despicable character unworthy of belief. The tone was set during the prosecutor's opening statement when he referred to the defendant as a "snitch". He continued this derogatory reference

during cross-examination of defense witnesses and suggested in his summation that defendant worked as an informant so that he could carry on illegal activities without police interference. Most outrageous of all was the prosecutor's suggestion that defendant was an associate of Walter Taylor, a former police informant, who just one week earlier had been convicted of one of the most vicious and highly publicized murders in Rochester history.

The prosecutor's cross-examination of the defendant was intemperate. He began by asking "You say you love children? I see at least four of Mr. Phillip's children or three of them in the courtroom." In response to the defendant's request to demonstrate how he held the gun he wrestled away from the decedent, the prosecutor interjected "Make believe. You are good at that." He questioned defendant repeatedly whether the prosecution witnesses were lying, a tactic which has been uniformly condemned as improper and inflammatory (see *People v Bailey,* 58 NY2d 272; *People v Ochoa,* 86 AD2d 637). At one point, he asked the defendant "Excuse me, when you lie, do you look up" and later asked the defendant "to tell the truth right now," in both instances improperly placing before the jury his personal belief that the defendant was lying (see *People v Shanis,* 36 NY2d 697, 699).

In addition to these improprieties, the record is replete with examples of prosecutorial behavior which was "unseemly and unprofessional in the extreme" (*People v Mott,* 94 AD2d 415, 418). The prosecutor referred to defense counsel as an "asshole" in the presence of the jury. Defense counsel unsuccessfully moved for a mistrial because of the inappropriate facial expressions which the prosecutor displayed throughout the trial. The prosecutor also committed prejudicial error by implying that the jury could infer defendant's guilt from his refusal to take a polygraph test (see *People v Leone,* 25 NY2d 511; *People v Smith,* 61 AD2d 91, 98).

All of this, however, was mild compared to the prosecutor's summation which, by itself, is a basis for reversal (see *People v Whalen,* 59 NY2d 273, 280-281; *People v Jackson,* 7 NY2d 142; *People v La Cava,* 75 AD2d 997). Defense counsel moved for a mistrial after the summation and

properly preserved the issue for review (*People v Bailey,* 58 NY2d 272; *People v Cobos,* 57 NY2d 798).

During summation, the prosecutor improperly aroused the jury's sense of sympathy. The following comment is illustrative. "Mr. Phillips was executed, in a sense, executed by this testimony. When that happened, his ability to speak to you, to tell you what happened, his rights, his ability to love, his ability to like children, his ability to take care of his children, his ability to stay out there and farm [*sic*] whatever he did is all cut short, all right, it's gone, and nothing we can, nothing we could do, you can do, I can do, is ever going to bring it back because a squeeze of a trigger removed Mr. Phillips." Such remarks have been uniformly condemned (*People v Ivey,* 83 AD2d 788, 789; *People v Range,* 49 AD2d 832, 833; *People v Clemons,* 48 AD2d 802). The prosecutor also repeatedly vouched for the credibility of his witnesses and improperly called upon the authority of his office to buttress his personal opinions (see *People v Bailey, supra; People v Lovello,* 1 NY2d 436, 439; cf. *People v Galloway,* 54 NY2d 396).

Moreover, during summation, the prosecutor attempted to shift the burden of proof from the People to the defendant by referring to the defendant's failure to call a ballistics expert and his failure to take a lie detector test. It is, of course, absolutely improper for a prosecutor to suggest that a defendant has an obligation to call witnesses on his own behalf, or that he failed to call certain witnesses because their testimony would have been unfavorable (see *People v Carborano,* 301 NY 39, 42; *People v Webb,* 68 AD2d 331, 334). The prosecutor's remark about the defendant's failure to call a ballistics expert was particularly egregious because it reflected on a primary issue of the case regarding the path of the fatal bullet and because the jury clearly gave considerable weight to the testimony of the People's firearms expert as evidenced by their request to have his testimony reread during deliberations.

It is also apparent from the record that the trial court rarely took appropriate action to mitigate the effect of the prosecutor's misconduct. For example, with respect to many of the prosecutor's improper comments, the court overruled objections by defense counsel and merely told the

jury to disregard the remarks. Thus, "[t]he court was mild in his reproofs and the jury may have gotten the impression that the Judge considered the prosecution's tactics to be necessary and proper" (*People v Steinhardt,* 9 NY2d 267, 271; *People v Libbett,* 101 AD2d 705; see, also, *People v Mott,* 94 AD2d 415, 419, *supra*).

The errors committed here were not harmless. This was defendant's second trial in an emotional case, involving a serious crime. As in the first trial which resulted in a hung jury, the jury here deliberated for 12 hours. The misconduct of the prosecutor was pervasive and prejudicial. The proof of defendant's guilt was wholly circumstantial and less than overwhelming. There were sharp discrepancies in the testimony concerning the key issues of defendant's credibility and intent, as well as the path of the fatal bullet. Thus, we must conclude that the misconduct of the prosecutor deprived defendant of his constitutional right to a fair trial (*People v Alicea, supra; People v Steinhardt, supra; People v Mott, supra; People v Ivey, supra*).

Accordingly, the judgment should be reversed and a new trial granted.

Doerr, J. P., Boomer, O'Donnell and Schnepp, JJ., concur.

Judgment unanimously reversed, on the law, and a new trial granted.