*551 OPINION OF THE COURT
Irving Lang, J.
This trilogy of cases raises the difficult issue of when a court should dismiss an indictment even though legally sufficient evidence is presented to the Grand Jury.
FACTS
Defendant Lonnie Monroe was indicted for robbery in the first degree. Defendant Michael Heyward was indicted for rape in the first degree. Defendant Wayne Wright was indicted for rape in the first degree, robbery in the first degree, and other related crimes.
Although the three cases are unrelated, a common theme emerges. That is, the evidence adduced before the Grand Jury in each case supports the charges contained in the indictments. It is the nature of the presentations which are challenged. Specifically, two significant issues are raised:
1. When are the prosecutor’s questions so misleading as to require dismissal of the indictment?
2. How “exculpatory” must Brady material be before the prosecutor is required to present such evidence to the Grand Jury?[1]
There is a marked paucity of appellate court decisions addressing these questions, for two reasons. First, if a Judge erroneously grants a motion to dismiss the indictment on the ground of an insufficient Grand Jury presentation, it is often easier for the prosecutor to simply represent the case than to appeal the Judge’s ruling. Secondly, if the Judge erroneously denies the defendant’s motion to dismiss the indictment, and if there is a conviction and subsequent appeal, that error is incurable, because the trial record, and not the Grand Jury minutes, is reviewed on appeal. (CPL 210.30, subd 6; Miranda v Isseks, 41 AD2d 176.)
FUNCTION OF THE GRAND JURY
The origins of the Grand Jury system may be traced back to 12th century England. It is believed that the first Grand Jury was composed of 12 knights, who stood as accusers, or *552 witnesses of suspected criminals. (Morvillo, Grand Jury Issues, NYU, April 3, 1984, p 1, col 1.) The system was created at a time when a struggle raged between the power of the crown and the rights of the populace. The Grand Jury was established to insure that a subject would have the right to have his fellow subjects examine an accusation which the king wished to assert, before he was actually tried for that charge. (People v Rosen, 74 NYS2d 624.)
In its early stages, the Grand Jury was unencumbered by procedural and evidentiary rules. The grand jurors were at liberty to indict, or refuse to indict, independent of the desire of the government. (People v Valles, 62 NY2d 36, 43.) The body “ ‘pledged to indict no one because of prejudice and to free no one because of special favor’ ” (People v Pelchat, 62 NY2d 97, 105, citing Costello v United States, 350 US 359, 362).
Following the English model, both the United States and New York State Constitutions mandate that “no person shall be held to answer for an infamous crime unless upon Grand Jury indictment.” (US Const, 5th Arndt; NY Const, art I, § 6.) The Grand Jury maintains its autonomy vis-avis the prosecuting authority. Its primary function is to “determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution” (People v Calbud, 49 NY2d 389, 394; People v Valles, supra). Performing the dual role of a sword and a shield, its responsibilities include both assessing the adequacy of the prosecutor’s case against a suspected offender and protecting the citizenry against unfounded and arbitrary criminal prosecution. (United States v Calandra, 414 US 338, 343; People v Valles, supra.) The Grand Jury may indict only when the evidence establishes a legally sufficient case. (CPL 190.65, subd 1; CPL 70.10, subd 1.) “The test is whether the evidence before the Grand Jury if unexplained and uncontradicted would warrant conviction by a trial jury” (People v Pelchat, supra, p 105; People v Valles, supra).
The prosecutor also performs a dual role as advocate and public officer. {People v Pelchat, supra.) “He is charged with the duty not only to seek convictions, but also to see that justice is done * * * In his position as a public officer he *553 owes a duty of fair dealing to the accused and candor to the courts” {supra, p 105). As legal advisor to the Grand Jury, the prosecutor must explain the law and “ ‘give due deference to [the Grand Jury’s] status as an independent legal body’” (People v Valles, supra, p 45 [dissenting opn of Meyers, J., citing ABA Standards Relating to The Prosecution Function (2d ed), Standard 3-3.5 (a)]).
Finally, the courts have a particular responsibility to prevent unfairness in Grand Jury proceedings since, contrary to the widely held belief that it is an adjunct of the prosecutor’s office, that body is an “ ‘arm of the court’ ”[2] (People v Ianniello, 21 NY2d 418, 424, citing Matter of Spector v Allen, 281 NY 251, 260). In this regard, courts have an “inherent” power to dismiss an indictment in certain circumstances, inter alia, “when there is a total lack of evidence before the Grand Jury (People v Glen, 173 NY 395, 400), when the quality of the evidence is challenged because the witness’s testimony was perjured (United, States v Basurto, 497 F2d 781 * * *), or when the indictment is founded on hearsay testimony which the Grand Jury may not have understood as such (United States v Estepa, 471 F2d 1132)”. (People v Pelchat, supra, p 106.) Indictments may also be dismissed “solely because they were obtained by the prosecutor for improper motives” (supra, p 106, citing United States v DeMarco, 401 F Supp 505, affd 550 F2d 1224; People v Tyler, 46 NY2d 251; Matter of Cunningham v Nadjari, 39 NY2d 314, 318).
TRILOGY
a) misleading questions
1. LONNIE MONROE
The District Attorney presented the Lonnie Monroe case to the Grand Jury on May 11, 1983. The first witness, Gwendolyn McKoy, testified that on February 20,1982, at approximately 5:30 a.m. she, her sister Priscilla, and one Julio Velleys were on a number 6 train in The Bronx. An individual approached and asked for the time. He then pulled out a gun, placed it at Julio’s head, and demanded *554 money. Ms. McKoy testified that she took her wallet, containing $20 out of her back pocket and handed it to the assailant. Julio took out his wallet, which contained approximately $200 and handed it over. The perpetrator then took Priscilla’s chain from around her neck, took her wrist watch, and left the train. Ms. McKoy further stated that prior to testifying before the Grand Jury (but on that same day — May 11, 1983) she viewed a lineup and identified the assailant as the individual seated in position No. 5. That person was Lonnie Monroe.
Defendant Monroe, after executing a waiver of immunity, testified with reference to the February incident. He stated, in essence, that there was a misidentification and that he did not commit the robbery. The prosecutor asked the defendant whether he wished to say anything else about the robbery, to which the defendant replied “that’s all I could think of now.” The prosecutor then questioned the defendant. The following exchange occurred:
“Q: Do you know someone named Gwendolyn McKoy?
“A: No.
“Q: Have you ever met Gwendolyn McKoy?
“A: No.
“Q: Have you ever heard her name before?
“A: No.
“Q: Do you think there is any reason she would have to lie?
“A: Misidentification.
“Q: She says that you robbed her.
“A: Misidentification.
“Q: How about Priscilla Smith?
“A: No.
“Q: Have you ever met her before?
“A: No.
“Q: Any reason she would lie?
“A: Misidentification.
“Q: How about Henry Hunter?
“A: No.
*555 “Q: Ever heard of him before?
“A: No.
“Q: Never?
“A: No.”
There are two flaws in this presentation. The first is the Assistant District Attorney’s repeated inquiry of the defendant regarding whether the prosecution witnesses are liars. Courts have universally condemned the prosecutor’s practice of characterizing witnesses as liars. (People v Galloway, 54 NY2d 396; People v Shanis, 36 NY2d 697; People v Goggins, 64 AD2d 717; People v Shaaff, 71 AD2d 630; People v Webb, 68 AD2d 331; People v Posner, 273 NY 184.) “Whether the defendant believed that other witnesses were lying is irrelevant” (People v Crossman, 69 AD2d 887, 888). “Such conduct is * * * entirely improper and highly prejudicial to the defendant” and has caused reversal at trial. (People v Balkum, 94 AD2d 933.) Absent bad faith, as opposed to overzealousness or inexperience, this error, in the context of a Grand Jury presentation, is not alone so egregious as to mandate dismissal of the indictment.
More critical, the Assistant District Attorney’s questions were extremely misleading. Specifically, the prosecutor asked defendant Monroe whether he knew Priscilla Smith (and whether she would lie) and whether he knew Henry Hunter. Such questions strongly suggested that those two persons had identified the defendant. In fact, there was no evidence before the Grand Jury that there were other identifications. And who is Henry Hunter? Even the District Attorney does not know who he is.
Since there is no Judge present to safeguard the defendant’s rights, the District Attorney stands in a position of vouching for the truth of the evidence he presents. (People v Rhodes, NYLJ, Oct. 31,1983, p 15, col 6.) In this case, by posing questions from which incorrect inferences are easily drawn, the prosecutor misled the Grand Jury and, in effect, placed nonexistent evidence before that body. The Grand Jury must be given the opportunity to carefully and accurately assess the sufficiency of the prosecutor’s presentation. This opportunity is not afforded (particularly in a *556 close identification case such as this) when the prosecutor, by his questions, misguides the Grand Jury on the most crucial issue.
In evaluating the sufficiency of Grand Jury minutes, the court does not expect, nor require a perfect presentation. Indeed, the Grand Jury proceeding should not be the source of extensive litigation. Interwoven in this, however, is the principle that the Grand Jury is an “arm of the court” and not a branch of the District Attorney’s office. The court has an affirmative obligation to insure fairness in the presentation. An indictment must be dismissed if the prosecutor’s error is both prejudicial to the defendant and is likely to effect the outcome of the case. I find that, in light of the lengthy delay between the alleged robbery on the one hand, and the identification and Grand Jury presentation on the other, the cumulative effects of the prosecutor’s errors were so prejudicial as to impair the integrity of the Grand Jury proceedings. Accordingly, the indictment is dismissed with leave to re-present to another Grand Jury.
B) BRADY AND THE GRAND JURY
2. MICHAEL HEYWARD
Michael Heyward stands indicted for rape in the first degree. The complainant, Laura Bailey, testified before the Grand Jury that on January 28, 1984, at approximately 12:30 A.M., she and the defendant (who she knew from work) purchased some liquor and went to the defendant’s apartment. They went into the living room, where the complainant alleges that she was raped by the defendant.
Defendant moves for dismissal of the indictment on the ground that the prosecutor failed to present exculpatory evidence to the Grand Jury. Specifically, defendant claims that the prosecutor was in possession of a police report which indicated that Heyward filed assault charges against the complainant on the date of the alleged rape (Jan. 28, 1984) some three hours before Ms. Bailey filed rape charges against the defendant. Defendant argues that the police report constitutes exculpatory information which, if introduced, would have damaged the complainant’s credibility and would have revealed her motive to lie. *557 Defendant claims that the complaining witness knew that defendant had filed assault charges against her before she reported the rape, and that this was not made known to the Grand Jury. Defendant seeks dismissal of the indictment due to the District Attorney’s failure to introduce this Brady material to the Grand Jury.
There is no precise formula to determine whether, and under what circumstances, the prosecutor must present exculpatory evidence to the Grand Jury. Standard 3.6 (b) of the American Bar Association Standards on The Prosecution Function states that “[t]he prosecutor should disclose to the grand jury any evidence which he knows will tend to negate guilt” (Morvillo, Grand Jury Issues, NYLJ, April 3, 1984, p 1, col 1; p 2, col 4). The United States Attorneys’ Manual similarly provides that “[a]lthough neither statutory nor case law imposes upon the prosecutor a legal obligation to present exculpatory evidence to the grand jury, it is the Department’s internal policy to do so under many circumstances” (US Attorneys’ Manual, Presentation of Exculpatory Evidence, § 9-11, p 334; Morvillo, Grand Jury Issues, NYLJ, April 3,1984, p 1, col 1; p 2, col 4).
Federal courts have not reached a uniform resolution of the issue. Whereas some courts have dismissed indictments for failure to apprise the Grand Jury of exculpatory evidence (United States v DeMarco, 401 F Supp 505, affd 550 F2d 1224, cert den 434 US 827, supra; United States v Gallo, 394 F Supp 310; United States v Martin, 480 F Supp 880), others have decided that the government has no duty to present evidence favorable to the defendant at that stage. (United States v Hata & Co., 535 F2d 508, cert den 429 US 828; United States v Lasky, 600 F2d 765, 768, cert den 444 US 979; Morvillo, Grand Jury Issues, NYLJ, April 3, 1984, p 1, col 1; p 2, col 4; see, also, United States v Mandel, 415 F Supp 1033, 1042.)
In New York, the results have been similarly varied. In People v Filis (87 Misc 2d 1067), the court held that the District Attorney’s failure to present to the Grand Jury a prior inconsistent statement of a witness that “a man”, rather than specific men, committed a homicide, does not require dismissal of the indictment. In People v Perez (105 *558 Misc 2d 845), the court determined that it is not a denial of due process to fail to present exculpatory evidence before the Grand Jury, as long as the defendant’s counsel is made aware of that evidence and the defendant is afforded an opportunity to present such evidence at trial. (See, also, People v Mitchell, 40 AD2d 117.)
In contrast, the court dismissed the indictment in People v McKinnon (NYLJ, March 27,1979, p 11, col 3), when the Grand Jury heard testimony that the defendant set a fire, but was prevented from inquiring into defendant’s reason or justification. Similarly, in People v Rhodes (NYLJ, Oct. 31, 1983, p 15, col 6, supra), the indictment was dismissed because the prosecutor failed to present evidence to the Grand Jury that the complainant, on two separate occasions, identified two other individuals as his assailant before selecting a photograph of the defendant as his attacker. Further, in People v Isla (96 AD2d 789) the Appellate Division commented that it was “more than just a little unfair” for the prosecutor to allow the officer to testify that the defendant “ ‘said that he had shot a man’ ” without having him finish the rest of the sentence — “ ‘in self-defense’ ”. (See, also, People v Valentine, NYLJ, March 7,1983, p 14, col 1; People v Simpson, NYLJ, Sept. 4,1979, p 13, col 3; People v Santoro, 63 NYS2d 615.)
Notwithstanding these diverse results certain basic principles emerge. The District Attorney is initially under no obligation to present exculpatory material on the Grand Jury level. (People v Filis, 87 Misc 2d 1067, 1069.) The prosecutor need not present all of his evidence, or embark upon a dress rehearsal for trial {supra, p 1069): “There is nothing inherently sacred about Brady evidence. While it is true that the Supreme Court laid down the doctrine ‘that the suppression by the prosecution of evidence favorable to an accused * * * violates due process where the evidence is material’ * * * this constitutes no precedent for presenting this material at an early stage. The value of such evidence, like any other form of evidence, lies in its relevance and materiality.”
In determining whether exculpatory material should be presented to the Grand Jury, one should ask whether the exculpatory matter is so important as to materially *559 influence the Grand Jury investigation. Would the introduction of the Brady material “possibly cause the Grand Jury to change its findings?” (People v Filis, supra, p 1069.) If the answer is yes, then such evidence should be brought before the Grand Jury, in order that a fair assessment of the prosecutor’s case occur.
Applying this test to the Heyward case, the question is whether the Grand Jury would have possibly changed its findings or whether its investigation would have been materially influenced had it known that the defendant filed assault charges against the complainant three hours prior to the complainant’s report of the rape? I think not.
The fact that the defendant filed a police report against the complainant merely addresses the complaining witness’ credibility, or motive to fabricate. It is information which is collateral to the basic issue which the Grand Jury must decide — that is, whether the evidence establishes every element of the crime and the defendant’s commission thereof.
In this court’s view, the information at issue is not really exculpatory material which, if known by the Grand Jury, would have logically caused it to change its ultimate determination. The Grand Jury’s function was not restricted by the prosecutor’s failure to apprise the Grand Jury of Heyward’s filing of the assault charge. Finally, it should be noted that the defendant had an opportunity to testify before the Grand Jury and disclose this information. He chose not to do so. In sum, the District Attorney is not required to introduce matters which are essentially summation points for the defendant. The District Attorney committed no error at all.
Accordingly, defendant Heyward’s motion to dismiss the indictment is denied.
3. Wayne Wright
Defendant Wright’s motion to dismiss the indictment also requires examination of the prosecutor’s Brady obligation vis-a-vis the Grand Jury.
The complainant, Midglia Maisonette, testified in the Grand Jury that on December 25, 1983, she was seated in her car with her child and godson, waiting for her hus *560 band. The car was running. Suddenly, a man got into the car, yelled that it was a kidnapping, and drove away. He threatened that if she alerted the police he would shoot one of the children. The assailant demanded Ms. Maisonette’s money, which she handed over. He then drove somewhat further, parked the car in the vicinity of Bruckner Boulevard, and raped the complainant.
Ms. Maisonette also testified that on January 25, 1984, she viewed a lineup. When asked by the Assistant District Attorney what position the perpetrator was sitting in, she replied “he was in number 2.” Defendant Wayne Wright was seated in position number 2.
At the lineup, however, Ms. Maisonette in fact answered quite differently when she was asked to identify the man who raped her. The lineup testimony was as follows:
“Q: I’m gonna ask you to step over to the 2 way mirror and see if you recognize anyone who was involved in that incident.
“A: It looks a little bit like the second one.”
(According to defendant’s attorney, 20 or 30 seconds transpired before the complaining witness made her identification.)
Defendant moves for an order to dismiss the indictment pursuant to CPL 210.20 (subd 1, par [c]) and 210.35 (subd 5). He argues that the identification made by the complainant at the lineup is exculpatory material because of its equivocal and uncertain nature. He claims that since Ms. Maisonette is the prosecution’s sole witness, the grand jurors should have been apprised of her indecisive response at the lineup.
The People argue that the complainant’s response at the lineup does not constitute Brady material since the lineup, if anything, tends to inculpate the defendant.
The People’s argument is rejected. Clearly, the identification which the complainant made at the lineup constitutes Brady material — were that the only evidence before the Grand Jury, an indictment could not have been sustained against Wayne Wright.
The issue is whether the District Attorney’s failure to alert the grand jurors to the discrepancy between the *561 witness’ equivocation at the lineup and her apparently “positive” identification before the Grand Jury is fatal to the indictment? Stated otherwise, is this exculpatory matter so important such that it would materially influence the Grand Jury’s investigation, or possibly cause it to change its findings?
Under the circumstances of this case, the answer to these questions must be yes. The individual who committed these acts is a stranger to the complainant. Thus, we deal here not simply with issues of credibility. Rather, the crucial issue in this case is the identification of the perpetrator. The sole link between Wright and the crime is the identification.
In my view, the prosecutor, as a quasi-judicial officer was duty bound to introduce the complainant’s lineup statement. Using the phrase of the Appellate Division, it was more than just a little unfair, in this one witness identification case, for the Assistant District Attorney to fail to give to the grand jurors a full account of what transpired at the lineup. Not only did the grand jurors have a right to hear that information in order to make an independent assessment of the case, but the defendant had a concomitant right to have it heard. Simply stated, the prosecutor’s withholding of the single witness’ inexact identification caused the Grand Jury presentation to be flawed. The grand jurors were left with the impression that an unqualified positive identification of the defendant was made. There may very well have been a legitimate reason why the original nonindictable identification was changed to a positive indictable identification. But the Grand Jury was entitled to know and evaluate it.
I stress that it is the confluence of circumstances — the fact that this is a one witness identification case, where the only testimony relating to guilt is the testimony of the complainant — which compels this result. Were there other corroborating evidence connecting Wayne Wright to the crime — if, for example, some of the complainant’s property were linked to the defendant — then the indictment might survive. However, in a case like this, where the only evidence is a “switch in story” by the complainant (of which the Grand Jury was not made aware), regarding *562 the critical issue of identification, the indictment must be dismissed. The failure of the prosecutor to apprise the Grand Jury of that significant, exculpatory material prejudiced the defendant and impaired the integrity of the Grand Jury proceeding.
Significantly, the District Attorney who conducted the lineup was the same one who presented the case to the Grand Jury. We therefore do not have to reach the questions of what remedy there would be if the District Attorney were unaware of the prior situation. {People v Pelchat, 62 NY2d 97, supra.)
Accordingly, the indictment is dismissed with leave to re-present to another Grand Jury.
CONCLUSION
Since an unfair presentation to the Grand Jury cannot be reviewed in the event of a conviction after trial, a special burden is placed on the prosecutor as presenter, and the court, as the supervisor, to insure fundamental fairness. In a close case, the District Attorney may not imply that there is more evidence than he has presented to the Grand Jury. Where the sole evidence before the Grand Jury is the change in statement of a major witness from an unindictable story to a recitation justifying indictment, a Grand Jury must be apprised of the original statement, and be given an opportunity to assess the reason for the change.

. Brady v Maryland, 373 US 83.

. See, for example, People v Futia (113 Misc 2d 651, affd sub nom. Matter of Morgenthau v Altman, 58 NY2d 1057, 1059), which held that the order in which witnesses are presented before the Grand Jury is “within the supervisory jurisdiction of the court”.