■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ORLANDO GOMEZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Golia, J.), rendered September 16, 1987, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

While we are cognizant of the oft-stated maxim that " '[r]eversal is an ill-suited remedy for prosecutorial misconduct' " (People v Galloway, 54 NY2d 396, 401, quoting United States v Modica, 663 F2d 1173, 1184, cert denied 456 US 989), in this case, where the evidence of guilt was less than overwhelming, the prosecutor's conduct was so prejudicial that it deprived the defendant of a fair trial. Thus, we conclude that the only appropriate remedy is the reversal of the defendant's judgment of conviction and the direction that a new trial be held.

The prosecutor's objectionable conduct occurred primarily during his cross-examination of the defendant's key witness, Jairo Velez, and during his summation. Velez, who was acquainted with the defendant and the victim, testified that he witnessed the shooting, that the person who pulled the trigger was a man named Ronald, and that he had not seen the defendant in the area when the shooting occurred. On cross-examination, the prosecutor began questioning Velez about a murder charge pending against him. At this point, a sidebar conference was held, at which the trial court concluded that Velez could be questioned regarding the underlying facts of

the pending charge, but that the questions to be asked were to be short and concise and were not to assume facts which had not been admitted by Velez. In discussing the types of questions that could be asked, the court noted that an objection to a question such as "did [the defendant] own an Uzi?" would be sustained. When cross-examination resumed, Velez was asked numerous questions about the charges pending against him, including whether in fact there was an Uzi machine gun carrying case and cleaning kit in the apartment in which the shooting occurred on the date of the shooting. The defendant's objection to that question was sustained, and after a sidebar conference the prosecutor was admonished not to refer to collateral proof again. When the prosecutor asked whether Velez was stopped by the police when exiting the apartment, an objection was sustained. The prosecutor then asked the defendant whether he was "currently facing charges with respect to the murder of Hernan Sanudo, committed on September 10, 1986". At this point, a sidebar conference was called, and defense counsel moved for a mistrial. The court accused the prosecutor of bad faith, noting that earlier, the prosecutor had prevented defense counsel from questioning the key prosecution witness about whether he had been charged with an offense that ultimately resulted in a youthful offender adjudication, arguing that the proffering of charges does not constitute evidence. However, the motion for a mistrial was denied.

At another point in his cross-examination, the prosecutor attempted to impeach the credibility of Velez with respect to his contacts with the defendant and his failure to provide the authorities with the exculpatory information he possessed. The prosecutor ascertained that in December of the year preceding the trial, Velez and the defendant saw each other everyday, and indicated his disbelief at Velez's indication that they did not speak to each other on those occasions. At a sidebar conference, it was learned that, in fact, Velez and the defendant saw each other daily in the Queens House of Detention, where they presumably would not have been free to converse. The court again noted the prosecutor's bad faith, and sustained defense counsel's objections to that line of questioning.

The foregoing are just a few of the many instances of prosecutorial overreaching which permeated this trial. Throughout his summation, the prosecutor improperly attempted to inflame the passions of the jurors *(see, People v Ashwal,* 39 NY2d 105; *People v Grice,* 100 AD2d 419; *People v*

*Rivera,* 75 AD2d 544), vouched for the credibility of his witnesses *(see, People v Simms,* 130 AD2d 525; *People v Mc-Leod,* 84 AD2d 794; *People v Brown,* 76 AD2d 932), denigrated the defense *(see, People v Simms, supra; People v Stewart,* 92 AD2d 226), and attempted to shift the burden of proof *(People v Grice, supra).* Although many of the prosecutor's remarks when taken separately would not have warranted reversal, given the frequency with which this misconduct occurred and the outrageousness of that misconduct, and given that the evidence against the defendant was less than overwhelming, we conclude that the defendant was denied a fair trial and, therefore, reverse the judgment of conviction.

In light of the foregoing, we need not reach the remaining issues raised by the defendant. Brown, J. P., Lawrence, Eiber and Spatt, JJ., concur.