■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KATHLEEN M. WOOD, Appellant. [751 NYS2d 106] —Kane, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered December 19, 2001, upon a verdict convicting defendant of the crimes of burglary in the second degree, arson in the third degree, assault in the second degree and criminal mischief in the second degree.

In June 2001, defendant was indicted for the crimes of burglary in the second degree, arson in the third degree, assault in the second degree and criminal mischief in the second degree stemming from defendant's involvement, together with Steven Kennerknecht, in the April 2000 fire at the home of Christopher Tylutki, located in the Town of Glen, Montgomery County. Following a jury trial, defendant was found guilty as charged and sentenced to concurrent prison terms of eight years for the burglary conviction, 3 to 9 years for the arson conviction, five years for the assault conviction and 2 to 6 years for the criminal mischief conviction. Thereafter, defendant moved pursuant to CPL 330.30 to set aside the verdict on the grounds that, inter alia, County Court improperly admitted an audiotape

into evidence and the testimony of defendant's accomplice was not adequately corroborated. County Court denied the motion, prompting this appeal.

On the night of the fire, defendant, Kennerknecht, defendant's former boyfriend and Patricia Ott, defendant's former friend and coworker, went to a bar together. Later that evening Kennerknecht set the fire at Tylutki's residence. Several hours later, Tylutki was driven home by a friend and, as he opened the front door to his trailer, he was blown from his front porch, suffering smoke inhalation and second degree burns to his face and hands. The trailer was destroyed in the blaze. Kennerknecht pleaded guilty to the crime of arson as well as other charges and, in return for testifying against defendant at her trial, he received consideration in sentencing.

Defendant's first argument for reversal centers on her contention that she was denied a fair trial because County Court improperly charged the jury concerning accessorial liability by failing to include a supplemental charge with respect to accessory after-the-fact. "Penal Law § 20.00 imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in *conduct* which constitutes the charged offense while himself 'acting with the mental culpability required for the commission' of that offense" (*People v Flayhart*, 72 NY2d 737, 741 [emphasis in original]). "To determine the adequacy of the court's instructions, they must be read as a whole against the background of the evidence produced at [trial]" (*People v Mink*, 284 AD2d 575, 576, *lv denied* 96 NY2d 922 [citation omitted]; *see People v Andujas*, 79 NY2d 113, 118). The court instructed the jury as to the provisions of Penal Law § 20.00 and further advised the jury that "mere presence at the scene of a crime, even with knowledge that the crime is taking place, or mere association with a perpetrator of a crime, does not by itself make a defendant criminally liable for that crime." As the jury was instructed concerning all of the elements of accessorial liability, we find that County Court properly denied defendant's request for the supplemental charge with respect to accessory after-the-fact.

We also reject defendant's contention that County Court erred in admitting into evidence an audiotape containing a conversation between Kennerknecht and defendant because neither party consented to the conversation being recorded. Under both federal and New York law, "[w]hen a party to the conversation consents to its recording * * * the constitutional privacy rights of other participants are not implicated" (*People*

*v McGee*, 49 NY2d 48, 59, *cert denied sub nom. Waters v New York*, 446 US 942; *see People v Gibson*, 23 NY2d 618, 619-620, *cert denied* 402 US 951; *People v Tayeh*, 96 AD2d 1045, 1046; *see also* CPL 700.05 [1]; Penal Law § 250.00 [1]). While both defendant and Kennerknecht deny recording the conversation, there is sufficient evidence in the record to support County Court's finding that defendant recorded the conversation and, thereby, provided the requisite consent. In the first instance, it appears that the tape was made in a car with no indication that anyone other than defendant and Kennerknecht were present. Significantly, while defendant denied making this tape, she admitted during a *Huntley* hearing that she and defendant had routinely recorded each other's conversations in the past. Furthermore, Kennerknecht testified that defendant had played him the audiotape in an effort to use it against him and that he had stolen the tape from her dresser. In light of this testimony, and given the considerable deference accorded the trial court with respect to suppression issues and credibility determinations (*see People v Burgess*, 241 AD2d 765, 767, *lv denied* 91 NY2d 870; *People v Gutkaiss*, 206 AD2d 628, 629-630, *lv denied* 84 NY2d 936), we conclude that the audiotape was properly admitted into evidence.

Next, we reject defendant's challenge to the legal sufficiency of the evidence and the weight the jury accorded it. Viewing the evidence in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621; *People v Kraft*, 278 AD2d 591, 591, *lv denied* 96 NY2d 864), the court must ascertain "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]). Simply stated, this is "a determination of whether the prosecution has proved a prima facie case" (*People v Luck*, 294 AD2d 618, 619, *lv denied* 98 NY2d 699; *see People v Zabala*, 290 AD2d 578, 578, *lv denied* 97 NY2d 735). Assuming that a verdict contrary to that reached by the jury is not wholly unreasonable, this Court must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, *supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62). Furthermore, while "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]; *see People v Moses*, 63 NY2d 299,

306; *see also* CPL 60.22 [2]), we find the evidence presented connected defendant "to the crime in a manner sufficient to satisfy the jury that an accomplice is telling the truth" (*People v Crow*, 284 AD2d 653, 653, *lv denied* 96 NY2d 900).

Viewing the evidence in a light most favorable to the People, we find that the evidence adduced at trial was legally sufficient to permit the jury to conclude, based upon reasonable permissible inferences, that defendant, with criminal intent, intentionally aided Kennerknecht in the commission of the crimes charged. At trial, Kennerknecht testified that he was jealous of Tylutki, who had dated defendant and whom he accused of fondling defendant. He further testified that during the course of the evening, he joked with defendant, stating, "It looked like a good night for Jewish lightening [*sic*]." Later that evening, Kennerknecht left the bar, allegedly to buy cigarettes, but testified that, at the urging of defendant and with defendant's mother's car, he went to Tylutki's trailer to set a fire. He returned approximately an hour later. He further testified that hours after he had originally set the fire, albeit unsuccessfully, he and defendant returned and he restarted the fire at defendant's direction. Kennerknecht stated that defendant dropped him off at Tylutki's, waited in the car while he restarted the fire, and she picked him up down the road from Tylutki's house. He further testified that defendant had previously taped a conversation in which Kennerknecht had admitted to something he had done 10 years ago and defendant had used that information to coerce Kennerknecht into committing the arson.

Defendant confirmed asking Kennerknecht to leave to buy her cigarettes notwithstanding that there was a cigarette machine in the bar. She also confirmed permitting Kennerknecht to take her mother's car to get the cigarettes even though she testified that it was not her usual practice to permit Kennerknecht to drive her mother's car alone because her mother got very angry when Kennerknecht used the car. Furthermore, despite the fact that she tried to have Tylutki arrested and he allegedly raped her and choked her son, defendant testified that the reason she was at the fire scene was to assist Tylutki. She further testified that, on the night of the fire, she and Kennerknecht argued in the car over whether Tylutki had been touching defendant and then Kennerknecht told her that he had started the fire in Tylutki's trailer and was going to check on it. He then abruptly stopped the car and got out, and defendant drove to her house. She testified that, not believing Kennerknecht, she turned the car around, saw

him walking up the road, stopped the car, he got in and they drove away. Shortly thereafter, they drove past Tylutki's trailer, finding it in flames. Defendant stated that she got out of the car, comforted Tylutki, and then she and Kennerknecht drove to her house after which Kennerknecht went home. Defendant gave a written statement to the police substantially consistent with her trial testimony.

Ott testified that defendant claimed that Tylutki raped her when she was 17 years old and that he had choked her son on another occasion. Ott's testimony corroborated both Kennerknecht's and defendant's testimony that, while there was a cigarette machine in the bar, at defendant's urging Kennerknecht left the bar to purchase cigarettes for defendant. She stated that, upon Kennerknecht's return to the bar approximately one hour later, she did not see him give defendant any cigarettes.* Furthermore, Ott testified that she received a call from defendant the next morning during which defendant said that she would not be surprised if Ott were questioned about the fire and to remember that defendant had been with her the entire evening while at the bar. Ott indicated that during that conversation, defendant, contrary to her trial testimony, told her that she heard about the fire on a scanner at home. The jury also considered the testimony of James Squillace, who confirmed that when defendant entered the bar on the evening in question, she argued with Tylutki and stated that "somewhere between 10:30 and 11:00" he saw defendant and Kennerknecht leave the bar and defendant return alone. In addition to the testimony, the audiotaped conversation between Kennerknecht and defendant reveals defendant expressing concerns as to her alibi.

Defendant's sworn written statement to the State Police, her trial testimony, the testimony of Ott and Squillace and the audiotape are adequate to corroborate Kennerknecht's testimony connecting defendant to the commission of the crime rendering Kennerknecht's testimony worthy of belief (*see People v Mensche*, 276 AD2d 834, 835, *lv denied* 95 NY2d 966). Furthermore, this evidence, together with Tylutki's testimony as to his resulting injuries and the value of his property damage, is sufficient to make out a prima facie case for each of the crimes charged (*see* Penal Law §§ 140.25, 150.10 [1]; § 120.05 [6]; § 145.10). In light of this evidence, we find a valid line of reasoning which could lead a rational person to the conclusion reached by the jury (*see* CPL 70.10; *People v Bleakley*, 69 NY2d

---

* In her grand jury testimony, Ott stated that she could not remember whether Kennerknecht returned with any cigarettes.

490, 495, *supra*). Moreover, given the deference which this Court must accord to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley, supra* at 495), it cannot be said that the jury erred in crediting Kennerknecht's testimony over that of defendant's. Hence, the verdict was not against the weight of the evidence.

Nor are we persuaded that the prosecutor's summation prejudiced her. Certainly, in light of the curative instructions given to the jury by County Court and in viewing the comments in the context of the entire summation, we do not find that defendant was deprived of a fair trial (*see People v Scott*, 294 AD2d 661, 665-666, *lv denied* 98 NY2d 732; *People v Webster*, 290 AD2d 659, 660, *lv denied* 98 NY2d 641).

Finally, we do not find the sentence imposed on defendant to be harsh or excessive. Here, defendant was sentenced to a prison term of eight years on her conviction for burglary in the second degree, considerably less than the maximum of 15 years authorized by statute (*see* Penal Law § 70.02 [3] [b]). Furthermore, defendant's claim that her culpability is minimal relative to Kennerknecht's is irrelevant inasmuch as there is no distinction between the criminal liability of a principal and an accessory (*see* Penal Law § 20.00). Under these circumstances, and given the fact that County Court considered mitigating circumstances, we decline to disturb defendant's sentence.

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Montgomery County for further proceedings pursuant to CPL 460.50 (5).