■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER M. ALLEN, Appellant. [787 NYS2d 417]—

Spain, J.P. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered September 18, 2002, upon a verdict convicting defendant of the crimes of rape in the first degree, sexual abuse in the first degree and unlawful imprisonment in the second degree.

Following a jury trial, defendant was convicted of first degree rape and other charges stemming from an incident in late July 2000 in the City of Troy, Rensselaer County, involving a 15-year-old girl who was a ninth grade classmate of defendant, then aged 16. The victim had been acquainted with defendant since third grade, and her best friend, then away on vacation, had been dating defendant for several months. The victim testified that on the day in question defendant unexpectedly visited her at the house where she was babysitting and, while the children were next door swimming at her grandmother's house, she repeatedly refused defendant's requests to have sex; when she attempted to leave the downstairs living room, defendant overcame her resistance and put his hands down her pants, touching her vagina. Defendant then pushed her upstairs, where he pushed her onto a bed and forcibly had sexual intercourse with her, ignoring her protestations to stop; defendant stopped before ejaculating, explaining he did not want to get her pregnant, and then left. The victim first reported this incident on or about September 19, 2000 to an adult acquaintance with whom she corresponded on the Internet and to her best friend. The adult communicated the victim's report to the victim's mother, who contacted police. Defendant also testified, reporting that the victim had expected him that day and that he had stayed for about two hours, watching television with her and at least one of the children, but unequivocally denied that they had engaged in any sexual relations.

Upon his convictions, County Court imposed concurrent prison terms, the maximum of which is a 25-year sentence. Defendant appeals, challenging the weight of the evidence, the admission of the victim's initial complaint as a "prompt outcry," the prosecutor's conduct including cross-examination of him regarding the victim's motive to fabricate, and the sentence.

First, pointing to the lack of physical evidence or physical injury coupled with what he characterizes as the victim's

"inherently implausible" description of the incident, defendant contends that the verdict was contrary to the weight of the evidence. In considering defendant's contention, we view the evidence in a neutral light and, finding that a contrary verdict would not have been wholly unreasonable, we make our own determination of the relative probative force of the conflicting testimony and the value of the inferences which may be drawn from the testimony (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Wood*, 299 AD2d 739, 741, 744 [2002], *lv denied* 99 NY2d 621 [2003]; *People v Roach*, 263 AD2d 763, 763 [1999], *lv denied* 93 NY2d 1045 [1999]). The divergent testimony of the victim and defendant presented "a classic credibility issue," and the jury obviously credited the victim's account, which was not contradicted by any compelling evidence offered by defendant and was not " 'so unworthy of belief as to be incredible as a matter of law' " (*People v Wright*, 214 AD2d 759, 762 [1995], *lv denied* 86 NY2d 805 [1995], quoting *People v Carthrens*, 171 AD2d 387, 392 [1991]; *accord People v Roach, supra* at 763; *see People v Black*, 304 AD2d 905, 907-908 [2003], *lv denied* 100 NY2d 578 [2003]; *People v Kelly*, 270 AD2d 511, 512 [2000], *lv denied* 95 NY2d 854 [2000]). Given the deference which we accord to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley, supra* at 495; *see People v Jenkins*, 282 AD2d 926, 928-929 [2001], *lv denied* 96 NY2d 903 [2001]), we cannot conclude that the jury erred in crediting the victim's testimony over that of defendant or failed to give the evidence the weight it should be accorded (*see People v Morey*, 304 AD2d 855, 856 [2003], *lv denied* 100 NY2d 564 [2003]; *People v Cobenais*, 301 AD2d 958, 958-959 [2003], *lv denied* 99 NY2d 653 [2003]; *People v Roach, supra*).

However, we agree with defendant's claim that the erroneous admission—as a "prompt outcry"—of testimony by two of the victim's friends regarding the victim's initial disclosure of the incident almost two months later improperly bolstered her credibility and testimony. Since the case turned totally on credibility, it cannot be deemed harmless error. Under the established "prompt outcry" exception to the hearsay rule precluding bolstering a witness's trial testimony with pretrial statements, "evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place" (*People v McDaniel*, 81 NY2d 10, 16 [1993]; *see People v Rice*, 75 NY2d 929, 931 [1990]). Designed today to combat the inevitable tendency of jurors to "doubt the veracity of a victim who failed to promptly complain of a sexual assault" (*People v McDaniel, supra* at 16; *see People v Rice, supra* at 932), the exception has long required that to be admis-

sible as a "timely" or "prompt" complaint, it must have been made "at the first suitable opportunity" (*People v O'Sullivan*, 104 NY 481, 486 [1887]; *see People v McDaniel, supra* at 17). While there is "no iron rule" (*Higgins v People*, 58 NY 377, 379 [1874]) and promptness has been deemed "a relative concept dependent on the facts—what might qualify as prompt in one case might not in another" (*People v McDaniel, supra* at 17), a significant delay as occurred here must be—but has not been—adequately explained (*see People v Shelton*, 1 NY3d 614, 615 [2004]; *People v O'Sullivan, supra* at 489-490; *People v Kornowski*, 178 AD2d 984, 984-985 [1991], *lv denied* 89 NY2d 1096 [1997]; *People v Smyers*, 167 AD2d 773, 775 [1990], *lv denied* 77 NY2d 967 [1991]; *People v Vincent*, 34 AD2d 705, 706 [1970], *affd* 27 NY2d 964 [1970]).

Here, the error began at the outset of the trial. The prosecutor's opening statement included repeated references to the victim's September 2000 disclosures and the reasons for her delay, in a manner designed to use those disclosures to credit her expected trial testimony. County Court overruled defendant's objections, indicating that it would make a ruling with respect to the admissibility of the disclosures during the trial. Thereafter, defense counsel's opening statement used the victim's failure to report the incident earlier to discredit her. At trial the victim testified that she did not tell anyone about this late July 2000 incident until approximately September 19, 2000—when she told her Internet friend over the phone—explaining that she had delayed reporting it because she was afraid of how people would react or respond, including her father who she feared would "go after" defendant; that she feared losing the friendship of her girlfriend, who was dating defendant; and that she did not go to the hospital because she was afraid to tell what happened. Not surprisingly in light of the court's ruling during the prosecutor's opening statement, defense counsel did not object to this testimony and extensively cross-examined the victim on her failure to report the incident earlier, effectively conceding that she had made the reports to friends but suggesting that she had fabricated them and that the delay discredited her. When the Internet friend was called to testify, the court ruled—over defendant's objection—that the victim's initial September complaint qualified as a "prompt outcry" complaint and then permitted both the Internet friend and the girlfriend to testify as part of the prosecution's case-in-chief that she had reported the incident to each of them, but—citing *People v McDaniel* (*supra*)—limiting testimony to the victim's report being of a sexual nature and that it involved defendant, but "no details."

In our view, there is an absence of legally sufficient circumstances which would excuse the victim's delay so as to allow disclosure of the belated complaints as "prompt" complaints, such as the victim—who was living at home with her parents—being under the control or threats of defendant during this period or being among strangers and without others in whom she could confide (*see People v McDaniel*, 81 NY2d 10, 17 [1993], *supra*; *People v O'Sullivan*, 104 NY 481, 489-490 [1887], *supra*; *People v Kornowski*, 178 AD2d 984, 985 [1991], *supra*; *cf. People v Shelton*, 1 NY3d 614, 615 [2004], *supra*; *People v Smyers*, 167 AD2d 773, 775 [1990], *supra*). While cognizant that recent studies suggest that withholding a complaint may not be unusual (*see People v McDaniel, supra* at 16-17; *People v Bennett*, 79 NY2d 464, 471-472 [1992]), we are constrained to conclude that the victim's September 2000 disclosures of the incident do not fall within the "prompt outcry" exception as defined under the law. Moreover, in view of the fact that the exclusively testimonial evidence of defendant's guilt cannot be fairly characterized as overwhelming—turning as it did on a credibility determination as between the victim's account and defendant's denials—there remains a significant probability that the erroneous admission of this evidence decided the verdict (*see People v Crimmins*, 36 NY2d 230, 242 [1975]). Testimony concerning a victim's disclosure to others in a case such as this can be decisive, as it "corroborate[s] the allegation that an assault took place" (*People v McDaniel, supra* at 16; *see People v Rice*, 75 NY2d 929, 931 [1990], *supra*) and bolsters the veracity of the victim in the jurors' eyes (*People v Rice, supra* at 931).

Significantly, the issue of the admissibility of the victim's September 2000 disclosures should have been raised and resolved before reference was made to them at trial—here, before opening statements. Once the issue was raised by the prosecutor in his opening statement, County Court should have taken an offer of proof or heard testimony outside the jury's presence and entertained arguments of counsel as to the admissibility of these disclosures. We also find that neither defendant's failure to object when the victim herself testified on direct to having reported the incident to her friends nor defendant's impeachment of the victim on cross-examination regarding her delays in reporting constituted a waiver of the issue or "opened the door" to the prosecutor eliciting from the two friends their corroborative testimony regarding the victim's initial disclosure, over defendant's timely objection (*cf. People v Williams*, 75 NY2d 858 [1990]; *People v Shook*, 294 AD2d 710, 712-713 [2002], *lv denied* 98 NY2d 702 [2002]; *People v Archer*, 232 AD2d 820, 822 [1996], *lv denied* 89 NY2d 1087 [1997]; *People v Fabian*, 213

AD2d 298, 299 [1995], *lv denied* 85 NY2d 972 [1995]). While defense counsel did not dispute that the victim's belated disclosures occurred as she had testified and appropriately used them to impeach her credibility, it was quite different and clear error for the court to permit the prosecutor throughout this trial to use the testimony of these witnesses, over defendant's objections, to bolster the victim's trial testimony and corroborate her account that an assault occurred—the very purpose of properly admitted prompt complaint testimony—because they were not prompt complaints (*see People v Deitsch*, 237 NY 300, 304 [1923]). Thus, defendant must be given a new trial.

Since we are ordering a new trial, we believe it would be useful to briefly address defendant's additional claim that reversible error also occurred during the prosecutor's cross-examination of him regarding whether and why the victim had fabricated these allegations. Here, defendant testified that, contrary to the victim's account of a forcible rape, there was no sexual contact of any nature between them. On cross-examination, the prosecutor sequentially asked defendant if the victim ever said why she was going to accuse defendant of rape (defendant answered: "Because she said I raped her"); if he knew of any motive or reason why she would fabricate such a story; or if anyone ever told him why. County Court sustained the defense counsel's objection to the prosecutor's question: "So as far as you know, she is just making it up out of whole cloth for no reason that you know of, correct?", but overruled the objection to the next question: "As far as you know . . . , she is completely fabricating this story for no reason you know of, correct?" While courts have repeatedly cautioned prosecutors to avoid forcing a testifying defendant into characterizing the People's witnesses as liars (*see People v Galloway*, 54 NY2d 396, 400 [1981]; *People v Berrios*, 298 AD2d 597 [2002]; *People v Ortiz*, 207 AD2d 279, 280 [1994], *lv denied* 84 NY2d 909 [1994]; *People v King*, 170 AD2d 710, 713 [1991], *lv denied* 77 NY2d 997 [1991]; *People v Webb*, 68 AD2d 331, 333 [1979]), "such conduct does not always require reversal . . . where, as here, the defendant's testimony leaves open only the suggestion that the People's witnesses have lied" (*People v Overlee*, 236 AD2d 133, 138-139 [1997], *lv denied* 91 NY2d 976 [1998]). Since defendant's testimony was that the victim's account was entirely false, we discern no error in asking defendant why the victim would so fabricate this incident, and if she was lying, which were relevant, nonrhetorical questions which were not phrased in such a way as to shift the burden of proof to defendant to provide an explanation or motive for her fabrication (*see People v Ruiz*, 8 AD3d 831, 832 [2004], *lv denied* 3 NY3d 711

[2004]; *People v Overlee, supra* at 138-140; *see also People v Nash*, 273 AD2d 696, 699-700 [2000]; *People v Herlan*, 99 AD2d 647 [1984]). However, the prosecutor's statements on summation—that defendant had not demonstrated any credible motive for the victim to falsify these allegations—did improperly attempt to shift the burden of proof and constituted compounding reversible error (*see People v Overlee, supra* at 138-140; *People v Ortiz, supra* at 280; *People v Roundtree*, 190 AD2d 879, 880 [1993]; *People v Farmer*, 122 AD2d 801, 803 [1986]; *People v Herlan, supra*; *People v Webb, supra* at 334; *cf. People v Ruiz, supra* at 832). Despite defense counsel's failure to object, we also find—in the interest of justice—that it was error for the prosecutor to question defendant regarding whether he had been asked by police to take a lie detector test and about his failure to testify to that on direct examination, a point argued in the prosecutor's summation to discredit defendant (*see People v Shedrick*, 66 NY2d 1015, 1018 [1985]; *People v Grice*, 100 AD2d 419, 421 [1984]; *cf. People v Hogan*, 259 AD2d 1025, 1026 [1999], *lv denied* 93 NY2d 926 [1999]; *People v Michaud*, 248 AD2d 823, 824 [1998], *lv denied* 91 NY2d 1010 [1998]). In view of the foregoing, we find that the cumulative errors deprived defendant of a fair trial and do not address defendant's contentions directed at, among other things, County Court's imposition of the maximum sentence.

Carpinello, Mugglin, Rose and Kane, JJ., concur. Ordered that judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.