OPINION OF THE COURT
Patrick D. Monserrate, J.
This is a motion by counsel for the jointly represented corporate defendants seeking the dismissal of the above-referenced indictments based upon the legal insufficiency of the evidence presented to the Grand Jury which indicted the defendant and further that the proceedings before that body were defective (CPL 210.20 [1] [b], [c]; 210.35).
The court has previously granted the defendants’ request that the Grand Jury minutes be reviewed and has authorized the release thereof to defense counsel to aid in the oral argument of the motion which took place on December 4, 1985 (CPL 210.30 [3]).
*557 Defense counsel contend[1] that the Grand Jury presentation was prejudicially deficient by reason of the failure of the presenting prosecutor to include within his legal instructions the possible availability to the defendants of a statutory affirmative defense.
The defendants were indicted for the crimes of obscenity in the second and third degrees (Penal Law §§ 235.06, 235.05) in connection with the same day sale at three locations of six allegedly obscene magazines to an investigator from the Broome County District Attorney’s office.
The part of the law omitted from the Grand Jury instructions provides the following (Penal Law § 235.15 [1]):
"§ 235.15 Obscenity; defense.
"1. In any prosecution for obscenity, it is an affirmative defense that the persons to whom allegedly obscene material was disseminated, or the audience to an allegedly obscene performance, consisted of persons or institutions having scientific, educational, governmental or other similar justification for possessing or viewing the same.”
The defense points out that the Grand Jury should have been made aware of the existence of the defense — and been given the opportunity to apply it for the benefit of the defendants — because evidence concerning its possible applicability was presented from several sources (but with no accompanying explanation as to its potential legal significance).
The cellophane wrappers in which each of the magazines were enclosed at the time of sale had affixed thereto labels (1 inch by 2 inches in size) bearing the following legend:

Also, testimony from witnesses indicated that signs to the same effect were prominently displayed at each of the locations, and one of the sales clerks testified that restrictions similar to the statutory provision were part of the instructions *558 he had received with respect to persons to whom he should and should not sell the magazines:
"Q Okay. How about, are you given any instructions about who you can sell the material to?
"A (No response.)
"Q In other words, would you sell to a ten-year old if a ten-year old walked in?
"A You have to be 18 to walk in the door.
"Q How do you know that?
"A Because we’re very very vigorous about that.
"Q How did you know about that? How did you find out about that?
"A I was told.
"Q Who told you?
"A When I was trained by Mike.
"Q By Mike Seaman?
"A Yes.
"Q Not that you can’t sell to someone under 18?
"A Right. And we have signs, don’t let anybody over — don’t let any minors in the store. If somebody comes in the store, they look like they might be a minor, be sure you proof them. So, obviously, you know, nobody cannot who’s not under 18.
"Q That’s the only requirement, as long as a person’s an adult, since it’s an adult bookstore, to ring up a sale?
"A No. They’re supposed to be buying it for educational, scientific justification.
"Q Did you ask the questions if they’re buying it for that purpose?
"A No.
"Q So you don’t ask them that question?
"A No. It’s on all the bags, on all the items itself. But if they say — I was trained that if somebody was to say to me that they wanted to buy it for reasons that didn’t sound like any of the above, for prurient reasons, particularly, that I was not to sell it to them.”
"The bags” referred to by the witness are also pertinent to the inquiry. Defense counsel made the court aware at oral argument that at the time of sale each of the cellophane enclosed magazines was also placed in an opaque brown paper bag with the referenced language imprinted thereon. Counsel contended that the failure of the prosecutor to have presented *559 the bags as exhibits further prejudiced their clients’ rights to a fair Grand Jury presentation.
When asked by the court to confirm whether the six subject magazines were so packaged at the time of purchase and, if so, why the bags had not been shown to the grand jurors, the Assistant District Attorney replied that such bags had in fact been used and that he had told the grand jurors that "they could see them if they wanted to”. A search of the transcript yields only the following (hardly dispositive of the point):
"by grand juror:
"Q Did you receive receipts in all these, that identified where they were purchased?
"A [Investigator Tronovitch] The receipts, I don’t believe are identified by the store itself, other than the date of purchase and the amount paid and the cash I received back. Again, they were stapled to the paper bag that the magazines came in. I also initialed the paper bag and the receipt itself with my initials and the date.
"mr. dooley: We have the — I didn’t identify those as exhibits at this point. I wasn’t planning to, but if you feel for some reason later on as part of your deliberations, you want to see them, we do have them available.”
The affirmative defense question aside for the moment, the evidence presented to the Grand Jury was sufficient to justify the indictments filed (CPL 190.65 [1]) and the legal instructions given were otherwise adequate to meet the minimal standards required for advising such a body of the law to be used in their deliberations (People v Calbud, Inc., 49 NY2d 389 [1980]).[2]
However, the failure of the prosecutor to advise the grand jurors as to the existence of the affirmative defense at issue— and to tell them that they could consider it if they saw fit — is fatal to the indictments at bar. The Court of Appeals has recently, and decisively, ruled that, evidence permitting, Grand Juries must be instructed about pertinent affirmative *560 defenses, particularly those which (as here) can effect an exoneration of an accused (as compared with those, merely mitigating the degree of an offense).
Judge (now Chief Judge) Wachtler wrote for the majority in People v Valles (62 NY2d 36, 38-39 [1984]):
"The extent of the District Attorney’s obligation to instruct the Grand Jury concerning defenses must be defined with reference to the role of that body. 'The primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution’ (People v Calbud, Inc., 49 NY2d 389, 394, supra). Viewed from this perspective, the question of whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution.
"The appropriate distinction for this purpose is between exculpatory and mitigating defenses. An exculpatory defense is one that would, if believed, result in a finding of no criminal liability. The Grand Jury’s function being to protect citizens from having to defend against unfounded accusations, such complete defenses would ordinarily rest peculiarly within that body’s proper domain. Thus, in the present case, had the Grand Jury believed that defendant’s acts were justified, no indictment would have been returned and an unwarranted prosecution would have been avoided. It is the possibility that criminal proceedings need not be undertaken at all which underscores the importance of the Grand Jury’s consideration of such defenses. This is so notwithstanding that, once a case goes to trial, the petit jury may disagree on the applicability of the same defense and find the defendant not guilty.
"When a defense is urged in mitigation, on the other hand, it is not done in an effort to avoid criminal liability entirely; rather, it is an attempt to reduce the gravity of the offense committed. If believed, such a defense would not, by itself, result in a verdict of not guilty, and thus the criminal prosecution would not have been unwarranted. Because consideration of such defenses by the Grand Jury would not prevent unfounded criminal accusation, but would, at best, merely reduce the degree of the crime charged, their presentation to the Grand Jury will not ordinarily be mandated. The District Attorney is free to seek an indictment for the highest crime the evidence will support. It is not necessary that, having presented a prima facie case and those complete defenses *561 suggested by the evidence, the District Attorney go further and present defenses in mitigation, which ordinarily will involve matters for resolution by the petit jury upon a full record.”
By way of explanation for his conscious decision not to instruct the Grand Jury for the 1985 Term X of this court as to the existence or meaning of the subject affirmative defense, the Assistant District Attorney told the court at oral argument that he felt that the need to do so had been obviated by the testimony of Investigator Tronovitch concerning the "cover story” he had used with each of the clerks who sold him the magazines: "Again, I told the store clerk that a friend was getting married and I was going to buy a couple magazines as a joke and put it in a suitcase”.
Thus, went the argument, since the investigator purchaser had told the sales clerks that he was buying the magazines for some purpose other than the "justification(s)” spelled out in the law, the affirmative defense was thereby unavailable to the defendants. Not an unreasonable conclusion — if it had been reached by the persons given the authority under the law to assess the credibility of witnesses’ testimony, determine the weight to be ascribed to the evidence, and generally to apply the pertinent rules of law to the facts as they found them to be: the Grand Jury.[3]
Here, the presenting prosecutor improperly usurped those functions of the Grand Jury. His actions — and later argument defending them — demonstrate a disturbing lack of awareness of and proper regard to the respective roles involved in Grand Jury presentations. The fact-finding/determination function of the Grand Jury must be free from unwarranted interference by either presenting prosecutor or impaneling court (People v Rider, 115 AD2d 123 [3d Dept 1985]; People v Monroe, 125 Misc 2d 550 [Sup Ct, Bronx County 1984]).
Therefore, the defendants’ motions to dismiss the indictments should be granted, with leave to the District Attorney *562 for Broome County to resubmit evidence concerning the matters therein to an appropriate Grand Jury (CPL 210.35 [5]).
It is so ordered.[4]

. Messrs. Reilly and Seekford both participated in the oral argument on behalf of the defendants.

. Interestingly the Court of Appeals seems content that no different/ higher standard is required to be applied where the subject matter of a Grand Jury presentation involves "First Amendment items”. That court having recently legislated that in reviewing applications for warrants for the seizure of such materials, Judges should apply a higher standard of "scrupulous exactitude” rather than the probable/reasonable cause test set by the Legislature (CPL 690.40 [2]; see, People v P. J. Video, 65 NY2d 566 [1985]).

. If advised of the affirmative defense and left to deliberate, would the grand jurors have found the testimony of Investigator Tronovitch credible (i.e., that he said what he said he said)? What weight would they have given to the fact that the sales clerk Barbra Parker knew Tronovitch, and knew that he was a police officer ("persons * * * having * * * governmental or other similar justification for possessing the same”)?

. In view of the determination of the instant motion, the court’s earlier directive scheduling the trial of the "Allies indictments” to begin on February 18, 1986 is hereby rescinded.