OPINION OF THE COURT
Fuchsberg, J.
In the main, this appeal calls upon us to consider whether it was reversible error for a prosecutor, in the presence of the jury, to express a personal conviction that a witness was testifying falsely.
The charges against the defendant, Daniel L. Bailey, stemmed from a residential burglary allegedly committed by him and an unknown accomplice. Bailey, who claims he was misidentified, took the stand in support of his defense of alibi. Nevertheless, the jury found him guilty and the Appellate Division has since upheld the judgment entered on the verdict. On the present appeal, now here by leave of a Judge of this court, we conclude the judgment cannot stand. Our reasons follow.
But first we set forth the implicated prosecutorial comments, obviously related to the overriding issue of identification:
Assistant District Attorney:
“Q. You told me yesterday? “A. Yes, in your office, that he had dirty blonde hair and an afro.
“Q. I submit to you, ma’am, your [sic] telling a bald face lie right now.”
Defendant’s attorney:
“I request that statement be stricken.”
Assistant District Attorney:
“I’ll sit in the stand and testify to that, Mr. Balok.
No further questions.”
*275 The Witness:
“Excuse me. He asked me if the guy had reddish hair too, and I said dirty blonde.”
Defendant’s attorney:
“I have no further questions.”
The Court:
“Witness excused.”
Assistant District Attorney:
“I apologize to the Court.”
Since the trial court never acted on the motion to strike, which of course served as an objection, its inaction not only constituted a denial of the motion (see Brenan v Moore McCormack Lines, 3 AD2d 1006), but, if anything, lent standing to the undisturbed remarks (People v Ashwal, 39 NY2d 105, 111). Moreover, defendant having moved unsuccessfully for a mistrial on this ground when the People rested, well before the case went to the jury, the matter was preserved for review (People v Cobos, 57 NY2d 798).
Also, since the People heavily rely on a plea of harmless error, some survey of the proof is in order. To this end, we focus primarily on the three witnesses on whom the People built their direct case. The story of the first of these, Taylor, was unilluminating. Found in possession of two of the stolen articles, he would only say that he must have purchased them under the influence of drugs. On this account, he denied any recollection of the identity of the seller.
The second, Hall, a twice-convicted burglar, claimed that he had encountered the defendant and a companion, the loot in their arms, in the yard back of the burglarized premises. However when, later that day, he spoke to the police, Hall described the person he eventually would say was the defendant as 6 feet 1 inch tall as against Bailey’s much, much shorter height, and, the very next day, was unable to identify Bailey’s picture in three tries at a police photographic array. Moreover, it was not until five days later, and only after Bailey had addressed him insultingly in a bar, that he telephoned the police to say he had located the perpetrator. After this he picked out the same picture which originally evaded him.
The third, Smith, was to become the target of the prosecutorial statements with which we are concerned. Taylor’s consort at the time avails of the crime were uncovered, *276 Smith apparently was present when these were brought into their home. Unchallenged in the record is that, at this point in her life, she always was “one way or the other * * * intoxicated or high or under some influence” and overwrought by ensuing proceedings to take her young daughter from her. It was to this background that she attributed a spotty memory. For instance, she averred that, although, as she saw him in court, the defendant’s appearance did not accord with her recollection, particularly in that his hair was not “afro” curly, she believed, though not without much “doubt”, that he was the one who had delivered the contraband. On the other hand, she described that occasion as one in which her usual state of “confusion” was exacerbated by a problem with a “kid” who then was acutely ill with “some drugs or something put in him”. Then, when the prosecutor, understandably pressing her for a better identification, ended his direct by asking point blank whether she was “sure” that Bailey indeed was the individual who came to her house, her answer was “I can’t — I wouldn’t swear on it he was the exact same person”. It was at a somewhat later stage, when the Assistant District Attorney had decided to recall Smith as a witness, that defense counsel, on recross, elicited the answer which precipitated the prosecutorial outburst.
To complete this synopsis, we add that Bailey, his mother and his father testified that, on the day of the burglary, a Sunday, Bailey spent his time intermittently eating, napping and viewing the television broadcast of a baseball game. When the prosecutor asked Bailey to assume that the broadcast had ended at 4:56 p.m. while Hall had fixed the time of the crime at about an hour later, Bailey suggested that his recollection, then seven months after the event, may have included subsequent news highlights of the game. The program log of the broadcast company, later allowed in evidence under the business record exception to the hearsay rule, indicated that the coverage of the game per se had terminated at 4:56 p.m.; no proof as to the news highlights was offered.
Against this background, we start our analysis by repeating our recent observation that “[i]t is not enough for [a District Attorney] to be intent on the prosecution of his *277 case. Granted that his paramount obligation is to the public, he must never lose sight of the fact that a defendant, as an integral member of the body politic, is entitled to a full measure of fairness. Put another way, his mission is not so much to convict as it is to achieve a just result” (People v Zimmer, 51 NY2d 390, 393, and authorities cited thereat).
Concern for adherence to this concept is not only principled but pragmatic. Else, the weight of the prestige of the office and its image of disinterestedness may impose upon a defendant’s right to an impartial trial (see, generally, Note, The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case, 54 Col L Rev 946). So it is that a prosecutor may not, either in the course of closing argument or even in a less argumentative trial context, “express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence” (ABA Project on Standards for Criminal Justice, Prosecution and Defense Function, Standard 3-5.8 [b]; see Ann., 50 ALR2d 766).
Though it would, therefore, have been perfectly permissible for the prosecutor here to have concentrated, in argument, on proved facts and circumstances and the inferences to be drawn therefrom in order to support or undermine the credibility of any witness, it was utterly impermissible for him to present himself, as he here in effect did, as an unsworn witness to Smith’s truthfulness (United States v Clark, 613 F2d 391).
Relying largely on People v Galloway (54 NY2d 396), the People, however, argue that, in the totality of the trial, it cannot be said that the defendant’s right to a fair trial was compromised. We do not agree.
For one thing, while, in Galloway, we upheld a conviction despite prosecutorial impropriety, that decision is not to be taken as a legal refuge for prosecutorial misconduct. Instead, each case must stand on its own feet. It suffices for present purposes then to note that, among other things, in Galloway, unlike the present case, the criticizable conduct was provoked in large part by the defense counsel, the Trial Judge took prompt and forceful corrective action, *278 objectionable matters largely went unpreserved by the defense and, whatever he may have implied, the prosecutor there did not directly impugn any witness by interposing personal knowledge or offer to so testify.
But, above all, because “the quantum and nature of the proof, excising the error”, is not overwhelming, there simply is no occasion to apply the harmless error doctrine (People v Crimmins, 36 NY2d 230, 241). The three witnesses-in-chief for the People were, to put it mildly, far less than compelling. Taylor’s part, as we know, was of little moment. And, by the time the prosecutor had resorted to the remarks with which he concluded Smith’s examination, her value to the People’s case had dwindled to a point where he thought it best, in summation, to acknowledge that it was “worthless”. Left was what the prosecutor further conceded was no more than a “one-to-one” confrontation between the twice-convicted, belatedly identifying Hall and Bailey’s alibi defense, the latter seemingly weakened by the television log but strengthened by disinterested proof that Bailey’s hair was never curly. Hence, it cannot be assumed that, absent the prosecutor’s volunteered “testimony”, Smith’s greater credibility would not have been enough to advance the defense to “a level of convincement” or, to put it another way, that it would not have carried the day (id., at p 241).*
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the County Court of the County of Chemung for a new trial.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order reversed, etc.

 Because the prosecutorial misconduct requires a reversal, we have no occasion to consider or pass upon the defendant’s other assignments of error.
One is the contention that the television log, though kept pursuant to Federal regulations, was not the kind of record embraced within CPLR 4518 (subd [c]), 2306 and 2307 and so should not have been admitted on a certification of authentication rather than on live foundational testimony.
The second point raises the question as to whether it was error to permit the People to use a prior contradictory statement to impeach its witness Smith on the theory that it had not been forewarned of her intention to testify as she did concerning defendant’s-hair (CPL 60.35, subd 3; see People v Fitzpatrick, 40 NY2d 44; People v Fuller, 50 NY2d 628, 638, n 5). In view of the disclosures at the first trial, the problem in any event is now academic.