■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAY VADELL, Appellant.—Judgment, Supreme Court, Bronx County (Joseph Mazur, J.), rendered June 7, 1985, convicting

defendant of manslaughter in the first degree and sentencing him to an indeterminate term of imprisonment of from 10 to 20 years, reversed, on the law, and the matter remanded for a new trial.

The proof of guilt against defendant in this brutal gang murder of Alberto Marrero in the rear schoolyard of P.S. 61 was far from overwhelming. It consisted of testimony by Israel Rivera that he had driven defendant, who was convicted of manslaughter in the first degree, back to the scene of the crime 15 minutes later to "see if it was true that [Alberto Marrero] was dead or alive." Rivera, a member of the Scorpions, an automobile club, testified that he had earlier driven five of his fellow Scorpions, including defendant, Jose Leon, "Bow Wow" Lopez, Tomas Morales and Efraim Diaz, and Marrero to a bodega where they purchased beer. On their way back to the club's headquarters, codefendant Leon, who was convicted at a joint trial with defendant of murder in the second degree, and Morales directed him to park in front of the school. Leon left the car carrying a bat, joined by Morales and Marrero. Rivera saw Leon strike Marrero over the head with the bat. He then saw Morales drag Marrero into the alleyway alongside the school. Leon followed. Diaz then left the car with a knife. He returned five minutes later, still holding the knife and with his hands covered with blood. Lopez then left the car and followed Diaz into the alleyway. Lopez returned five minutes later screaming, "They killed the man over there." Leon, Morales and Diaz then returned to the car, with blood all over their shirts. Leon and Morales told Rivera that they had killed Marrero and that anyone who spoke about it "was going to get the same thing." After an autopsy, Marrero was found to have died from stab and cut wounds to the face, neck and head, penetrating the brain and eye, and blunt force injuries of the head and body with laceration of the liver and intestine. According to Rivera, at the time of the original incident, defendant, intoxicated, had remained with him by the car, leaning against the door with "his eyes up." When they returned, defendant alone entered the alleyway leading to the rear schoolyard carrying, as he had all day, a weapon made of a knife and a stick. He was gone for about five or 10 minutes. When he returned, unbloodied, he said, "Now I'm sure that he is dead." Rivera testified that there had been no prior discussion about assaulting Marrero and that he and defendant were surprised when the others attacked him. The other major prosecution witness, Charles Betancourt, also a member of the Scorpions, had a

subsequent conversation with defendant in the presence of Lopez. When Betancourt, who had also been arrested for the homicide, inquired as to what had happened, defendant told him that he had killed Marrero. Later, however, Betancourt testified that defendant only told him that he was involved. Betancourt also had a conversation with Leon who told him that he had killed Marrero but that defendant had had nothing to do with it.

Against the background of this testimony the prosecutor asked Betancourt what had made him ask defendant about his role in the homicide. Over objection, Betancourt answered, "Because I heard it from somebody else." Although the answer was stricken, the prosecutor was then permitted to ask if Betancourt had a conversation with anyone else before speaking to defendant. Over objection, Betancourt was permitted to testify that after the homicide he had a conversation with defendant's wife, Eve Perez. The clear implication of this question and answer, of course, was that defendant had told his wife that he had participated in the homicide. To compound the error, the prosecutor then asked Betancourt, "When you had the conversation with Evie that made you go and ask Ray whether he had done the murder, were there any marks on Evie's face?" Although defense counsel's objection was sustained, the prosecutor, not to be deterred, asked, "Mr. Betancourt, do you know whether or not Evie received a beating because of what she had told you?" Another objection was made and sustained and a motion for a mistrial made and denied. The prosecutor, not content to let the matter rest, later made reference in his summation to the conversation between Betancourt and defendant's wife. In our view, these questions and the prosecutor's purposeful misconduct in asking them require reversal. So strong was the implication underlying all these questions that defendant had told his wife that he had participated in the homicide, that during its deliberations the jury asked for the testimony regarding defendant's "wife telling him that he did it." The court instructed the jury, "There is no testimony of the contents of the conversation, but there was testimony there was conversation." This hardly cured the harm done. Thus, the wife, who never testified, became the primary witness for the prosecution against her husband, thereby denying defendant his 6th Amendment right to confront and cross-examine witnesses against him. In our view, considering the nature of the evidence against him, the introduction of this damaging hearsay cannot withstand harmless error analysis. *(See, People v Bai-*

*ley,* 58 NY2d 272, 278; *People v Crimmins,* 36 NY2d 230, 241.) Concur—Sullivan, Carro, Rosenberger and Ellerin, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I dissent and would affirm.

I disagree with the majority's finding that "[t]he proof of guilt against defendant in this brutal gang murder of Alberto Marrero * * * was far from overwhelming."

Israel Rivera testified that following the striking and stabbing of the victim, Alberto Marrero, by the other members of the gang, he drove defendant-appellant back to the schoolyard where the victim lay. Rivera testified as follows:

*"Question: Did Ray tell you at any time that night that he thought that Alberto may still be alive?*

*"Answer: When we went around in the car, when we went around the park, that's when he said it.* When we went around, that's when he went to check." (Emphasis added.)

According to Rivera, defendant-appellant went alone into the alleyway, carrying a weapon consisting of a knife and a stick. He returned to the car, five to 10 minutes later. In response to the prosecutor's question, "What did he say?", Rivera testified: *"When he came back,* when he came back from there to here, when he went into the car, that's when— that he went from there to here, *that's when he said, 'Now, I am sure that he is dead.' "* (Emphasis added.)

The other key prosecution witness, Charles Betancourt, testified that defendant-appellant told him he had killed Marrero. Although there are disparities in Betancourt's later testimony concerning Vadell's involvement therein, the credibility of both Betancourt and Rivera was properly left to the determination of the jury. *(See, People v Samuels,* 68 AD2d 663, 666, *affd* 50 NY2d 1035, *cert denied* 449 US 984.) The weight afforded their testimony led the jury to reach a verdict of guilty. Furthermore, as the majority notes, many of the prosecutor's questions to Betancourt concerning his conversation with defendant's wife were objected to, and those objections were sustained by the court.

In applying a harmless error analysis *(People v Crimmins,* 36 NY2d 230), I do not reach the same conclusion as the majority. Notwithstanding the errors found by the majority to require a reversal, the "quantum and nature of proof of the defendant's guilt" would have led the jury to the same result. *(People v Crimmins, supra,* at p 240.)

In writing for the Court of Appeals in *Crimmins (supra,* at p 241), Judge Jones stated that "it does not follow that an

otherwise guilty defendant is entitled to a reversal whenever error has crept into his trial." The prosecutorial misconduct which occurred did not substantially prejudice defendant receiving a fair trial. (CPL 470.05 [1]; *People v Galloway,* 54 NY2d 396, 401.)