OPINION OF THE COURT
Read, J.
A Syracuse grand jury indicted defendant Dwight R. DeLee for second-degree murder as a hate crime (Penal Law §§ 125.25 [1]; 485.05 [1] [a]), second-degree murder (Penal Law § 125.25 [1]) and third-degree criminal weapon possession (Penal Law § 265.02 [1]).
Defendant was tried in County Court before a jury, which rendered a verdict convicting him of the lesser included offense of first-degree manslaughter as a hate crime (Penal Law §§ 125.20, 485.05 [1] [a]), acquitting him of the lesser included offense of first-degree manslaughter (Penal Law § 125.20) and convicting him of the charged weapon possession offense. Upon hearing the jury’s verdict, defense counsel requested that the judge poll the jury and allow him to make “a motion before the jury is dismissed, at the Bench.” After polling the jury, the judge held a sidebar, and counsel argued that the jury’s verdict was inconsistent. After stating that he understood counsel’s argument, the judge announced that he would call the jurors back to the courtroom and dismiss them, adding, “Is that acceptable?” Counsel replied, “Yes, Judge.” When the jurors returned to the courtroom, the judge noted that he had “not excuse[d] them until [he] discussed the issue brought up by [defense counsel] with the lawyers.” Recognizing that he had not previously taken the jury’s verdict on ordinary second-degree manslaughter, the judge elicited from the jurors that they had acquitted defendant of that offense. He then dismissed the jury.
Prior to sentencing, defendant moved pursuant to CPL 330.30 (1) to set aside the verdict as repugnant. Defendant contended that, in light of the elements of first-degree manslaughter as a hate crime and ordinary first-degree manslaughter as charged to the jury, the verdict was repugnant because the two crimes shared the same basic elements, and therefore, as a matter of law, he could not be guilty of first-degree manslaughter as a hate crime and yet not guilty of ordinary first-degree manslaughter. The People countered that, because the judge instructed the jurors that a person commits first-degree manslaughter as a hate crime by committing first-degree manslaugh *607 ter and additionally selecting the victim based on perceived sexual orientation, the jury must have concluded that ordinary first-degree manslaughter was akin to a lesser included offense of the hate crime, such that a conviction of the hate crime rendered a conviction of ordinary first-degree manslaughter superfluous. In support of this theory, the People presented an affidavit of the jury’s foreperson.
At sentencing, the judge denied defendant’s motion to set aside the verdict on repugnancy grounds without elaborating on his reasoning. Defendant appealed, and on July 19, 2013, the Appellate Division, with one Justice dissenting, modified the judgment on the law by reversing defendant’s conviction for first-degree manslaughter as a hate crime and dismissing the first count of the indictment, and otherwise affirmed (108 AD3d 1145 [4th Dept 2013]). The Appellate Division concluded that defendant had preserved his repugnancy claim by arguing that the verdict was repugnant prior to the jury’s discharge {id. at 1146). The court then explained that the verdict was repugnant because
“[b]y acquitting defendant of manslaughter in the first degree, the jury necessarily found that the People failed to prove beyond a reasonable doubt at least one element of manslaughter in the first degree. To find defendant guilty of manslaughter in the first degree as a hate crime, however, the jury must have found that the People proved beyond a reasonable doubt all of the elements of manslaughter in the first degree, plus the added element that defendant selected the victim due to his sexual orientation. It therefore follows that the verdict is inconsistent” {id. at 1146-1147).
The Appellate Division continued that,
“even assuming, arguendo, that the [trial judge] suggested to the jurors in its instructions that they could convict defendant of only one of the manslaughter in the first degree charges, . . . such a ‘suggestion’ would be immaterial inasmuch as the Court of Appeals has made clear that we may ‘look[ ] to the record only to review the jury charge so as to ascertain what essential elements were described by the trial court’ ” (id. at 1147, quoting People v Tucker, 55 NY2d 1, 7 [1981]).
*608 The court pointed out that “even crediting the theory of the dissent that ordinary or plain manslaughter in the first degree is a lesser included offense of manslaughter in the first degree as a hate crime, the verdict is nevertheless inconsistent” because the jury “ ‘necessarily decided that one of the essential elements [of ordinary or plain manslaughter in the first degree] was not proven beyond a reasonable doubt’ ” (id. at 1148, quoting People v Muhammad, 17 NY3d 532, 539 [2011]).
The dissenting Justice rejected defendant’s claim on the merits (id. at 1151 [Peradotto, J., dissenting]). Stating that the critical inquiry was whether the jury, “as instructed,” reached an inherently self-contradictory verdict, she concluded that the jury’s verdict here was not repugnant (id. [internal quotation marks and citation omitted]). The People appealed to us by permission of the dissenting Justice (21 NY3d 1047 [2013]), and we now modify.
This case presents a straightforward application of Tucker and Muhammad, which clearly contemplate that when jury verdicts are absolutely inconsistent, the verdict is repugnant. The rationale for the repugnancy doctrine is that the defendant cannot be convicted when the jury actually finds, via a legally inconsistent split verdict, that the defendant did not commit an essential element of the crime (Muhammad, 17 NY3d at 539; Tucker, 55 NY2d at 6). Given that premise, “a verdict is repugnant only if it is legally impossible — under all conceivable circumstances — for the jury to have convicted the defendant on one count but not the other,” and, “[i]f there is a possible theory under which a split verdict could be legally permissible, it cannot be repugnant, regardless of whether that theory has evidentiary support in a particular case” (Muhammad, 17 NY3d at 539-540).
Accordingly, repugnancy does not depend on the evidence presented at trial or the record of the jury’s deliberative process, and “[t]he instructions to the jury will be examined only to determine whether the jury, as instructed, must have reached an inherently self-contradictory verdict” (Tucker, 55 NY2d at 8). In making these determinations, it is inappropriate for the reviewing court to “attempt to divine the jury’s collective mental process” (id. at 4). “Jurors are allowed to compromise, make mistakes, be confused or even extend mercy when rendering their verdicts” (Muhammad, 17 NY3d at 544).
Here, the jury’s verdict was inconsistent, and thus repugnant. The jury convicted defendant of first-degree man *609 slaughter as a hate crime, but acquitted him of first-degree manslaughter. In Muhammad, a very recent decision, we used the following hypothetical case to demonstrate how repugnancy analysis works:
“[Consider] a case where charge 1 requires proof of elements A, B and C; [and] charge 2 requires proof of elements A, B, C and D. If the jury convicts a defendant on the second charge, thereby finding that all four elements have been proven beyond a reasonable doubt, but acquits on the first charge, the verdict is repugnant since the acquittal would necessarily involve a finding that at least one of the essential elements of charge 2 — either A, B or C — was not proven beyond a reasonable doubt” (Muhammad, 17 NY3d at 540 [internal quotation marks omitted]).
This is exactly what, in fact, happened in this case. All of the elements of first-degree manslaughter are included in the elements of first-degree manslaughter as a hate crime. Thus, to find the defendant not guilty of first-degree manslaughter necessarily means that at least one of the elements of first-degree manslaughter as a hate crime was not proved beyond a reasonable doubt.
The People’s reasoning to the contrary is not persuasive. The foreperson’s affidavit is the opinion of just one juror, and, in any event, cannot be considered under our long-standing precedent. Further, while the People argue that County Court’s charge allowed the jury to consider the hate crime as a separate track or inquiry from the non-hate crime, the judge specifically instructed the jurors to consider the non-hate crime charges separately and independently from their hate crime counterparts.
Next, we reach the question of the remedy. In Muhammad, we stated in a footnote that the remedy for a repugnant verdict was “dismissal of the repugnant conviction” (17 NY3d at 539 n 1). In other words, where the jury’s verdict proves to be repugnant, the appellate court must reverse the defendant’s conviction and dismiss the count of the indictment underlying that conviction. This was dictum since we held in Muhammad (and its companion case) that the verdicts were not, in fact, legally repugnant. Moreover, we cited as authority People v Hampton (61 NY2d 963, 964 [1984]) and People v Carbonell (40 NY2d 948, 948-949 [1976]), which do not discuss the proper *610 remedy for repugnant verdicts. Essentially, these brief, memorandum decisions merely state that the repugnant charges should be dismissed. Carbonell, moreover, predates Tucker, the case in which we first articulated our approach to repugnancy claims.
In Muhammad, we noted that the purpose of New York’s repugnancy doctrine was, in part, to “ensure that an individual is not convicted of ‘a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all’ ” (Muhammad, 17 NY3d at 539, quoting Tucker, 55 NY2d at 6). While such a rationale is consistent with the remedy of dismissal of the repugnant charge, we have further recognized that a repugnant verdict does not always signify that a defendant has been convicted of a crime on which the jury actually found that he did not commit an essential element. Indeed, as we pointed out in Tucker, a jury “may freely reject evidence and exercise its mercy function” (55 NY2d at 8). In other words, regardless of the court’s instructions, a jury is “free to extend leniency and may decide not to convict a defendant of one or more charges” (Muhammad, 17 NY3d at 539). In Tucker, we observed that, where a repugnant verdict was the result, not of irrationality, but mercy, courts “should not . . . undermine the jury’s role and participation by setting aside the verdict” (55 NY2d at 7). But if this mercy function is the cause of a repugnant verdict, the remedy of dismissal of the repugnant conviction is arguably unwarranted. Indeed, it provides a defendant with an even greater windfall than he has already received.
There is no constitutional or statutory provision that mandates dismissal for a repugnancy error. Given that New York’s repugnancy jurisprudence already affords defendants greater protection than the Federal Constitution requires (see Muhammad, 17 NY3d at 538), permitting a retrial on the repugnant charge upon which the jury convicted, but not on the charge of which the jury actually acquitted defendant, strikes a reasonable balance. This is particularly so given that a reviewing court can never know the reason for the repugnancy. Accordingly, the People may resubmit the crime of first-degree manslaughter as a hate crime to a new grand jury (see People v Mayo, 48 NY2d 245, 253 [1979]).
Finally, we again emphasize that where “a trial court finds that an announced verdict is repugnant, it may explain the inconsistency to the jurors and direct them to reconsider their de *611 cisión” (Muhammad, 17 NY3d at 541 n 5). Indeed, under the Criminal Procedure Law the trial court not only may, but must, do so (see CPL 310.50 [2] [“If the jury renders a verdict which in form is not in accordance with the court’s instructions or which is otherwise legally defective, the court must explain the defect or error and must direct the jury to reconsider such verdict”]).
Accordingly, the order of the Appellate Division should be modified by granting the People, if they be so advised, leave to resubmit the charge of manslaughter in the first degree as a hate crime to another grand jury, and, as so modified, affirmed.