People v T.P. (2025 NY Slip Op 03642)

People v T.P.

2025 NY Slip Op 03642

Decided on June 17, 2025

Court of Appeals

Halligan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 17, 2025

No. 45

[*1]The People & c., Respondent,
v
T.P., Appellant.

Corey M. Meyer, for appellant.
Daniel J. Mattle, for respondent.

HALLIGAN, J.

The defendant was tried and convicted of first-degree manslaughter for stabbing her boyfriend, which resulted in his death. At trial, the defendant pursued a justification defense under Penal Law § 35.15. She claimed that the victim had severely physically abused her over the course of their relationship, and that she stabbed him during the course of a violent attack. The defendant asserts that her trial counsel provided ineffective assistance for failing to object to remarks that the prosecutor made during summation which misrepresented critical evidence and repeatedly denigrated the defendant. We agree, and therefore reverse.
I.
In 2017, the defendant met the victim and began a romantic relationship with him. The relationship quickly became abusive. At trial, several witnesses, including the defendant and several of her friends, testified that the victim had physically abused the defendant numerous times over the course of their relationship. That abuse, which occurred in both public and private settings, was severe, and included witness reports that the victim had strangled the defendant multiple times. After one public episode, an order of protection was issued against the victim in the defendant's favor.
It was one such abusive episode which ultimately led to the victim's death in 2018. After spending an evening with several friends, the defendant returned to one friend's house with the victim and others. She testified that, after laying down in a back room with one of her friends, the victim began to forcibly perform oral sex on her and ultimately raped her. When she pushed the victim off, he became violent and strangled her until she was able to break free and run to another room in the house. The fighting continued. The defendant testified that she picked up a kitchen knife that was nearby, and, fearing "for [her] life," stabbed the victim once as he lunged at her. The victim died several hours later.
The defendant was indicted in Supreme Court, Erie County on one count of manslaughter in the first degree (see Penal Law § 125.20 [1]). At trial, defense counsel pursued a defense of justification. As codified at Penal Law § 35.15, a justification defense excuses a defendant's use of deadly physical force when a defendant "reasonably believes that such other person is using or about to use deadly physical force" (Penal Law § 35.15 [2] [a]). Defense counsel requested that the trial court issue jury instructions on the justification defense "as it relates to the use of deadly physical force," and the trial court did so.
During summation, the prosecutor sought to undermine the defendant's justification defense by suggesting that the defendant was not credible. In furtherance of that strategy, the prosecutor told the jury, "You never heard testimony that [the defendant] was in fear for her life. You never heard testimony that she was in fear of serious injury. Nothing." As the People concede, this statement was false. The defendant had, in fact, testified that immediately before the stabbing she was "scared for my life," and when subsequently asked whether she had testified that she was "afraid for your life," the defendant responded "Yes, I was."
Additionally, the prosecutor claimed in summation that the defendant had lied on the stand, using the word "lie" or "lies" fourteen times in total. Among other comments, the prosecutor claimed that "the only thing we can get out of [the defendant] are lies"; that her testimony was "unsubstantiated wild lies"; and that her testimony was "[m]eant to distract you from . . . the endless lies she has told you throughout this entire process." The prosecutor also posed rhetorical questions along similar lines to the jury: "How could you possibly believe one thing that comes out of her mouth after all the lies she told you?" and "What wouldn't she lie about?" Following summations, the court excused the jury and expressed concern about "[t]he repeated use of the word lies, which I also was going to limit if not eliminate," but noted that it did not do so as the word "had been used [*2]throughout the trial without objection and I didn't think it was proper for me to do it at this point."
Defense counsel did not object either to the prosecutor's flat misstatement of the defendant's testimony that she feared for her life or to the repeated use of the word "lies." Although defense counsel did make two objections during summation, neither were related to these comments, and both were overruled.
The jury found the defendant guilty. On appeal, the defendant argued, as relevant here, that the prosecutor's improper remarks during summation deprived her of a fair trial and required reversal. The Appellate Division affirmed, holding that the issue was unpreserved and that trial counsel had not provided ineffective assistance by failing to object to those remarks (216 AD3d 1469, 1470-1471 [4th Dept 2023]). As to the remarks during summation, the Appellate Division held they did not deny the defendant a fair trial, "especially given the court's instructions to the jurors that their recollection of testimony would control" (id. at 1471). The Appellate Division reversed Supreme Court's denial of the defendant's motion for sentencing relief under the Domestic Violence Survivors Justice Act (DVSJA) (see Penal Law § 60.12), and reduced the defendant's sentence to a term of 4 years of imprisonment with 2 ½ years of post-release supervision (216 AD3d at 1471).
II.
Before us, the defendant argues that trial counsel's failure to object to the conceded misstatement of the defendant's testimony and the repeated use of the word "lies" amounts to ineffective assistance of counsel. Under New York law, a defendant has received ineffective assistance of counsel when errors in counsel's performance amount to a denial of "meaningful representation" (People v Caban, 5 NY3d 143, 152 [2005]). This standard focuses on "the fairness of the proceedings as a whole" (People v Stultz, 2 NY3d 277, 284 [2004]), and considers "the circumstances of a particular case, viewed in totality and as of the time of the representation" (People v Baldi, 54 NY2d 137, 147 [1981]). We must determine whether counsel's performance "was consistent with strategic decisions of a 'reasonably competent attorney' " (People v Benevento, 91 NY2d 708, 712 [1998], citing People v Satterfield, 66 NY2d 796, 799 [1985]), and whether counsel's performance effectively deprived a defendant of a fair trial (Benevento, 91 NY2d at 713-714, citing People v Flores, 84 NY2d 184, 188-189 [1994]).
We conclude that counsel's failure to object to multiple improper statements constituted a failure to provide meaningful representation, and under the circumstances of this case, denied the defendant the benefit of a fair trial.
Although we have recognized that during summation, counsel is permitted " 'to comment upon every pertinent matter of fact bearing upon the questions the jury have to decide,' " summation "is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at [their] command" (People v Ashwal, 39 NY2d 105, 109 [1976], quoting Williams v Brooklyn El. R.R. Co., 126 NY 96, 102 [1891]). The "well-defined limits" on comments during summation require that counsel "stay within 'the four corners of the evidence' " (id., quoting Williams, 126 NY at 103), and not make comments that misrepresent or are "contrary to" the evidence (People v Wright, 25 NY3d 769, 782 [2015]). A prosecutor may not "express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence" (People v Bailey, 58 NY2d 272, 277 [1983] [internal quotation marks omitted]; see also United States v Young, 470 US 1, 8 [1985]), and must avoid "resorting to name calling," such as "stating . . . during the summation that the defendant and [their] lawyer [are] liars" (People v Shanis, 36 NY2d 697, 699 [1975]).
Several of the prosecutor's comments during summation were clearly impermissible. First, by admonishing the jury that they had "never heard testimony that [the defendant] was in fear for her life," and that they had never heard testimony that "she was in fear of serious injury," the prosecutor directly contradicted the defendant's sworn testimony. This misrepresentation of the record well exceeds the bounds of permissible commentary on the evidence (cf. Ashwal, 39 NY2d at 109; Wright, 25 NY3d at 782), and indeed, contradicts the crux of the defendant's justification defense (see Penal Law § 35.15 [2] [a]). Likewise, the prosecutor's repeated assertions that all of the defendant's trial testimony was "lies," as well as his rhetorical question of "what wouldn't she lie about?" impermissibly advanced the prosecutor's belief that the defendant's testimony was false (see Bailey, 58 NY2d at 274-275 [remark during examination that "I submit to you . . . (you're) telling a bald face lie right now" held improper]; People v Shanis, 36 NY2d at 699; see also People v Fiori, 262 AD2d 1081, 1081 [4th Dept 1999] ["We additionally note that the prosecutor acted improperly on summation in denigrating the defense, vouching for the credibility of the People's witnesses and calling defendant a liar"]).
To be sure, the People have a right to comment on the evidence, including, as relevant here, the defendant's prior inconsistent statements concerning the night of the victim's death and her claim that she had previously lied in making such statements. However, a number of the remarks, including the prosecutor's assertion that the jury could not "possibly believe one thing [the defendant] says," exceeded simply commenting on the defendant's inconsistent statements. Rather, such remarks are more fairly characterized as expressing the prosecutor's "personal belief or opinion as to the truth or falsity" of the defendant's testimony in its entirety (Bailey, 58 NY2d at 277 [internal quotation marks omitted]).
Under these circumstances, given the numerous and repeated improper statements made by the prosecutor during summation, we hold that trial counsel provided ineffective assistance for failing to object to the prosecutor's summation remarks. "[W]here defense counsel fails to object when faced with a pattern of prosecutorial misstatements . . . , such as statements that misrepresent evidence central to the determination of guilt, and where there is no apparent strategic explanation for defense counsel's silence, defendant has been deprived of meaningful representation" (Wright, 25 NY3d at 780). The mischaracterization of the defendant's testimony about her fear of the victim went to the heart of her justification defense, and the accusations of repeated lies further undermined her credibility in the jury's eyes. Although the trial court properly instructed the jury that attorney remarks made during summations were not evidence, in such a "highly charged, potentially outcome determinative context" (People v Fisher, 18 NY3d 964, 967 [2012]), such an instruction was insufficient to cure the effect of the prosecutor's comments in this case. As such, trial counsel's failure to object to these comments led to the jury receiving an incorrect and inflammatory view of the evidence in summation, which ultimately tainted "the fairness of the proceedings as a whole" (Stultz, 2 NY3d at 284).
Given our ruling, we need not consider the defendant's challenges to several other alleged misstatements in the prosecution's summation, or the defendant's contention that, under our precedent in People v Goetz (68 NY2d 96 [1986]) and People v Wesley (73 NY2d 351 [1989]), it was ineffective assistance for trial counsel to fail to request a jury charge which included an addendum to the New York Model Criminal Jury Instructions.[FN*]
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

GARCIA, J. (concurring):

I join fully in the majority opinion and write separately only to address the troubling concurrence in this case. Judge Rivera's concurrence purports to join the majority "in result, but on a different ground" yet articulates no point of disagreement with the majority on the issue that decides the case (Rivera, J., concurring op at 1-2). It is unclear whether Judge Rivera agrees or disagrees with the majority's holding that defense counsel's failure to object to the improper summation requires reversal. Rather than address the dispositive issue, Judge Rivera's concurrence offers a view on two issues not reached by the majority. First, it reaches the issue deliberately left unaddressed, namely whether counsel was ineffective for failing to request the Criminal Jury Instructions (CJI) addendum on evidence of a party's reputation for violence (see majority op at 8 [declining to reach "defendant's contention that . . . it was ineffective assistance for trial counsel to fail to request" the CJI addendum and declining to address whether the addendum would apply under these circumstances]; Rivera, J., concurring op at 4-7 [reaching same]; see also CJI2d[NY] Justification of Person by Deadly Physical Force at 3, 
https://www.nycourts.gov/judges/cji/1General/Defenses/CJI2d.Justification.Person.Deadly_Force.pdf). Judge Rivera concludes that the addendum is warranted where the past violent acts were committed against the defendant, in addition to third parties (Rivera, J., concurring op at 11-12; see generally People v Miller, 39 NY 2d 543 [1976]).
Second, and perhaps even more concerning, Judge Rivera's concurrence opines that the current CJI charge is "inadequate" (Rivera, J., concurring op at 4), "confusing" (id. at 5, 6), and "defective" (id. at 6), and proposes her own version of the justification charge for "cases involving [*3]a survivor of intimate partner violence, or any person who has been the target of the victim's prior acts of violence" (id. at 12-13). Apparently, submitting the standard charge in those cases is insufficient because the language does not address the open issue Judge Rivera's concurrence would settle (id. at 11 ["The CJI as currently drafted only partially accords with Miller" because it may be misunderstood as "limited to violence the victim committed against a third party"]). No party or amicus submission has argued for, let alone proposed, any change to the standard charge. Moreover, the sole issue here is ineffective assistance of counsel and it is inconceivable that defense counsel could be labeled "ineffective" for failing to request a charge that appears for the first time in Judge Rivera's concurrence.
The CJI—crafted by the Committee on Criminal Jury Instructions comprised of retired and active judges and members of the bar—are intended to "correctly and concisely state the law in a way that jurors can understand" (Steven W. Fisher, Pattern Instruction for Jurors in Criminal Cases See to Explain Fundamental Legal Principles, 73 NY St BJ 29, 30-31 [June 2001]). Courts are not required to use the model instructions, but "[a]s the Court has emphasized, the model charges contain the 'preferred phrasing' of legal instructions" (People v J.L., 36 NY3d 112, 122 [2020], quoting People v Cubino, 88 NY2d 998, 1000 [1996]). Whatever weight the CJI Committee may wish to give specific language proposed in a separate writing addressing issues left open by the majority, courts must recognize that deviating from the standard charge entails risks (see People v Hill, 52 AD3d 380, 382 [1st Dept 2008] ["(E)ach time a judge declines to employ the carefully thought-out measured tone of the standard jury charge in favor of improvised language, an additional risk of reversal and a new trial is created"] [internal quotation marks omitted]). For a court to do so based on the view of a single judge of this Court on an open issue that has not been tested in the adversarial process or considered by the Committee in the normal course (compare People v Boone, 30 NY3d 521, 534-535 [2017] [detailing the process of amending the relevant CJI after recommendations made by the New York State Justice Task Force], with Rivera, J., concurring op at 12 ["trial courts should consider" charging specific language drafted by concurring judge]; id. at 13 [noting that the new language is also proposed for the "Bench"]), would be ill-advised (cf. People v Viviani, 36 NY3d 564, 575 [2021] [holding a statute establishing a special prosecutor unconstitutional and rejecting a savings construction proposed in a dissent that had addressed the constitutional issue not reached by the majority in the earlier case, after three trial courts and the Appellate Division had adopted that dissent's proposed construction]; see also People v Davidson, 27 NY3d 1083, 1086-1096 [2016] [Rivera, J., dissenting]). I do not share the view that Judge Rivera's concurrence "benefits" (Rivera, J., concurring op at 13) lower courts or our future deliberative process.
RIVERA, J. (concurring):
Reversal and a new trial are warranted based on defendant's meritorious claim that the trial court's jury charge on justification in the use of deadly physical force was erroneous. Moreover, the trial court and defendant, who alleges she was justified in fatally stabbing her abusive intimate partner because she feared for her life, rely on language from the Model Criminal Jury Instructions (CJI) that may confuse the jury in cases where the victim has previously committed violent acts against the defendant. Therefore, I join in result, but on a different ground from the majority.
I.
A.
Defendant was tried and convicted of first-degree manslaughter for killing her physically and sexually abusive intimate partner. At trial, she admitted to fatally stabbing her partner during the course of a brutal attack by him. Defendant testified to several prior assaults by decedent, and six different witnesses further testified to his serious physical abuse of defendant, including multiple instances of strangulation. In one incident, decedent kicked defendant repeatedly in the stomach and then slammed her into a car trunk. Bystanders called the police, which resulted in a court issuing a restraining order that was still in effect the night defendant stabbed decedent. Witnesses testified that, during another incident, it took "maybe four to five people" to pull decedent off of defendant [*4]until he stopped beating her. Defendant asserted that she acted in self-defense the night of the stabbing because she feared for her life.
The trial court charged the jury with a modified version of the CJI on the use of deadly physical force in self-defense. The court charged, in relevant part, that a defendant is justified in the use of deadly physical force if they reasonably believed such force was necessary to defend against what they reasonably believed was the use or imminent use of deadly physical force by the decedent. The court then instructed the jury on the two-part test set forth in the CJI:
"The determination of whether a person reasonably believes deadly physical force to be necessary to defend herself from what she reasonably believes to be the use or imminent use of deadly physical force by another individual requires the application of a two-part test. That test applies to this case in the following way. First, the defendant must have actually believed that [the victim] was using or about to use deadly physical force against her, and that the defendant's own use of deadly physical force was necessary to defend herself from it. . . And second, that a reasonable person in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have had those same beliefs. Thus, under our law of justification, it's not sufficient that the defendant honestly believed in her own mind that she was faced with defending herself against the use or imminent use of deadly physical force. An honest belief, no matter how genuine or sincere, may yet be unreasonable. To have been justified in the use of deadly physical force, the defendant must have honestly believed that it was necessary to defend herself from what she honestly believed to be the use or imminent use of such force by [the victim], and a reasonable person in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have believed that too."
The court also charged the jury on the use of deadly force in response to nondeadly force in accordance with the CJI, adding, as recommended by the CJI in cases where there is evidence of a reputation for violence: "A person cannot be considered the initial aggressor simply because [they] ha[ve] a reputation for violence or ha[ve] previously engaged in violent acts."
Defendant argues that the charge failed to adequately instruct the jury to consider defendant's knowledge of the decedent's past violent acts when weighing the reasonableness of her belief in the necessity of using deadly force. She is correct that the charge was deficient.
B.
The Court has identified several factors that must be communicated to the jury when a defendant asserts a claim of self-defense. In People v Goetz, the Court stated that "a determination of reasonableness must be based on the 'circumstances' facing a defendant or [their] 'situation' " (68 [*5]NY2d 96, 114 [1986]). The Court explained that a person's circumstances and situation "encompass more than the physical movements of the potential assailant. . . [They] include any relevant knowledge the defendant had about that person" and "any prior experiences [they] had which could provide a reasonable basis for a belief that another person's intentions were to injure. . . or that the use of deadly force was necessary under the circumstances" (id.). Further, "a jury should be instructed to consider this type of evidence in weighing the defendant's actions" (id. at 114-115). A few years later, in People v Wesley, the Court reversed a manslaughter conviction where the justification charge did not "direct the jury's attention to the factors that [it] outlined in Goetz as critical to the jury's consideration of the defendant's circumstances" (see 76 NY2d 555, 558-560 [1990]).
The charge that the trial court gave in this case was inadequate to instruct the jury, in accordance with Goetz and Wesley, that decedent's prior violent acts against defendant should be considered in determining the reasonableness of her conduct. The charge asserted that defendant must have actually believed that decedent was using or about to use deadly physical force against her, thus necessitating that she defend herself with deadly physical force. The charge also specifically instructed the jury that "a reasonable person in the defendant's position knowing what the defendant knew and being in the same circumstances would have had those same beliefs" and again that "a reasonable person in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have believed that too." This language could have misled the jury to believe that it had to assess defendant's conduct solely based on the events during this final attack. The charge did not expressly state that the jury could consider, if it believed defendant, that decedent was an abusive intimate partner who had threatened and physically attacked defendant in the past.

The initial aggressor charge was also confusing. It was the first mention of decedent's prior violent acts, and it only discussed them by stating that this history, standing alone, could not be used to conclude that he was the initial aggressor. Defendant testified that decedent had sexually and physically assaulted her in the bedroom before the stabbing. It was undisputed that the killing happened in a common space, after defendant fled the bedroom naked and decedent followed her. By emphasizing only when this history could not be considered, and failing to explicitly state when it could be considered, the charge left the overall impression that the jury must evaluate the stabbing in a vacuum, without considering the ongoing and escalating physical abuse against defendant. For example, the jury may not have believed it could consider the past history of decedent strangling defendant, including earlier that same evening, even though strangulation by a partner is one of the most accurate predictors of being killed by that partner (Nancy Glass et al., Non-Fatal Strangulation Is an Important Risk Factor for Homicide of Women, J Emerg Med. [Oct. 2008] at 329 ["Prior non-fatal strangulation was associated with greater than six-fold odds . . . of becoming an attempted homicide, and over seven-fold odds . . . of becoming a completed homicide"]). Given the confusing nature of the charge, it is unsurprising that the jury requested clarification. The jury asked the court to clarify "what constitutes self-defense," and whether it could "have [the charge] in written form to review and discuss." In response, the court merely repeated the same instruction without further clarification.
Defense counsel failed to object to the defective charge despite multiple opportunities to do so. Counsel did not object when, during the initial charge on justification, the court omitted any [*6]instruction that the victim's prior violent acts against the defendant may be considered in determining the reasonableness of her conduct. Counsel again failed to object when the court charged the jury against considering decedent to be the initial aggressor simply because of his prior violent acts. And then, for a third time, counsel failed to object to the court's repetition of the defective charge in response to the jury's request for clarification on self-defense. Three times the trial court failed to adequately charge the jury, and three times defense counsel stayed silent. No strategy explains these failures, because the entire defense turned on the jury believing that defendant feared for her life during decedent's final attack, based, in part, on decedent's prior violence against her. The defense necessitated that the jury fully appreciate defendant's experiences as an intimate partner violence survivor and how those experiences shaped her beliefs in the moments before she stabbed decedent.
In sum, the charge was erroneous and prejudicial to defendant, and therefore counsel should have objected. The remedy for these errors is reversal and a new trial (see People v DeGina, 72 NY2d 768 [1988] [reversing and ordering a new trial where an "erroneous [ ] charge unduly prejudiced (the) defendant"]; People v Nesbitt, 20 NY3d 1080 [2013] [reversing and ordering a new trial upon concluding that defense counsel's error overlooking an issue "rendered his assistance to (the) defendant ineffective"]).
II.
The charging error illustrated by this appeal suggests that the CJI may not adequately inform jurors on how to consider a victim's history of abuse against a defendant asserting justification. Proper instruction in cases involving intimate partners is a matter of statewide concern given the well-documented prevalence of intimate partner violence (see New York State Comptroller, Domestic Violence: Recent Trends in New York, https://www.osc.ny.gov/files/reports/pdf/domestic-violence-recent-trends-10-23.pdf [accessed May 11, 2025] [noting that there were "90,000 reported victims of domestic violence statewide in 2022," that domestic homicides "account[ed] for 14 percent of all homicides" in 2021, and that nationally, one in four women and one in ten men "have experienced sexual violence, physical violence and/or stalking by an intimate partner during their lifetime"]). New York's legislature has enacted laws to address what legislators nationwide have identified as the legal system's failure to account for the experiences of intimate partner violence survivors (see e.g. L 2019, ch 31 [enacting the Domestic Violence Survivors Justice Act ("DVSJA"), which provides a mechanism for incarcerated survivors to apply for resentencing]; Assembly Mem in Supp, Bill Jacket, L 2019, ch 31 [recognizing that existing law did not "allow judges discretion to fully consider the impact of domestic violence" when sentencing defendants]; see also Pub L 103-322, tit IV, 108 Stat 1796, 1902 [enacting the federal Violence Against Women Act and criminalizing interstate intimate partner violence]). Additionally, scholars and advocates have suggested that the trier of fact should be instructed to consider an intimate partner defendant's experiences of prior violence and threats by the victim when deciding whether the defendant's actions, in turn, were justified (see e.g. Deborrah Ann Klis, Reforms to Criminal Defense Instructions: New Patterned Jury Instructions Which Account for the Experience of the Battered Woman Who Kills Her Battering Mate, 24 Golden Gate U L Rev 131, 150-151, 168 [1994] [proposing jury instructions, including that "[r]elevant to the honesty of the defendant's belief [in [*7]the need to defend against imminent peril] are the internal and external forces existing in the defendant's life which lend credence to the genuine need for subsequent defensive conduct against the present victim," and that "[t]he circumstances to be considered include those which preceded the killing if the person claiming justifiable homicide demonstrates that earlier incidents directly contributed to the perception of imminent danger," because such instructions are necessary to ensure that a survivor of intimate partner violence "receives a fair trial"]). Thus, "I write separately to suggest possible ways in which a trial court may properly instruct a jury" to avoid the confusion that the instructions, as charged below, were prone to cause (see People v DeLee, 24 NY3d 603, 611 [2014] [Abdus-Salaam, J., concurring]).[FN1]
Defendant argues that the trial court erroneously omitted the following CJI three-paragraph addendum on evidence of a party's reputation for violence:
"Now, you have heard testimony that (specify) had a reputation for violence and engaged in violent acts. Normally, the law does not permit such testimony. The reason is that every person, regardless of that person's relative worth to the community, has the right to live undisturbed by an unlawful assault.
However, in assessing whether the defendant did 'reasonably believe' that the deadly physical force he/she used was necessary to defend himself/herself [or someone else] from what he/she 'reasonably believed' to be the use or imminent use of such force by (specify), you may consider whether the defendant knew that (specify) had a reputation for violence or had engaged in violent acts. If so, you may then consider to what extent, if any, that knowledge contributed to a 'reasonable belief' that the deadly physical force the defendant used was necessary to defend himself/herself [or someone else] from what he/she 'reasonably believed' was the use or imminent use of such force by (specify).
Further, provided the defendant believed (specify) had such reputation or engaged in such acts, it does not matter whether that belief was correct" (CJI2d [NY] Penal Law § 35.15 [2]).
This part of the instruction cites People v Miller (39 NY2d 543 [1976]). In Miller, the defendant was charged with fatally shooting his sister during a violent family argument, in which his sister approached him with a butcher knife (id.at 547). The Court held that, "[u]nder these circumstances, the jury should be permitted to consider proof that the defendant was aware of his sister's prior violent attack upon her mother," because such evidence "would be probative on the reasonableness of defendant's apprehension for his own safety" (id. at 553-554). Pre-Miller, evidence of a victim's prior violent acts was inadmissible in homicide and assault cases where a defendant claimed they acted in self-defense (id. at 548-549). This rule of preclusion was based on two policy considerations: first, that "a jury [not] find a homicide justifiable for the wrong reason—i.e. that the deceased was unworthy of life" (id. at 550-551); and second, "the need to carefully limit and narrow the issues that the jury must decide" so that the jury is not distracted by collateral matters with little relevance to the task of determining the defendant's guilt or innocence (id. at 551 [internal citation omitted]).
Following the trend in several other jurisdictions, the Court in Miller adopted a new rule that evidence of prior violent acts may be admitted "where it is shown that the defendant was actually aware of such particular acts at the time of the homicide or assault" (see 39 NY2d at 550, 553, citing McMorris v State, 58 Wis 2d 144 [1973]; State v Gordon, 37 Del 219, 222 [1935]). The Court reasoned that although character and reputation evidence is generally inadmissible other than for impeachment of character witnesses, when a defendant asserts justification, "the crucial fact at issue [] is not the character of the victim, but rather, the state of mind of the defendant" (id. at 551). To that point:
"knowledge of specific instances of violence by the victim may have a more significant impact on a defendant's mental state than any vague awareness of a general reputation for violence. A demonstrated capacity for acts of extreme violence will no doubt instill a fear more quickly and more deeply than a veiled threat or knowledge of a generally violent proclivity" (id.).
The jury should be instructed that such evidence goes directly "to the issue of the reasonableness of [a] defendant's apprehensions" (id. at 552). The Court in Miller made no distinction between a victim's violent acts against the defendant or a third party (id.). The defining fact is a defendant's knowledge of violent acts—regardless of the target—because that knowledge informs and shapes the defendant's alleged reasonable belief that deadly force was necessary to defend themselves or another against the victim.
The CJI as currently drafted only partially accords with Miller.[FN2] The three-paragraph [*8]addendum adequately communicates that a jury may consider the victim's reputation for violence or violent acts in assessing whether defendant reasonably believed that deadly physical force was necessary to defend against the victim's use or imminent use of deadly physical force. This addresses clearly the part of Miller's rule that applies to a defendant who is not the target of the violence. However, jurors may misunderstand this language as limited to violence the victim committed against a third party.
Other language in the CJI heightens the risk of confusion. For example, the language charged here that focused on a defendant's knowledge at the moment when they use deadly physical force draws the jury's attention to the facts as they unfolded at that moment. Further, the CJI definition of a reasonable person as one who "in the defendant's position, knowing what the defendant knew and being in the same circumstance, would have had those same beliefs," fails to reference a defendant's full range of experience with the victim. The CJI Committee may wish to consider the points I have raised and whether revision of the CJI is warranted. Specifically, the Committee may wish to clarify that when there is evidence of past violent acts, a victim's violent attacks against the defendant are to be considered equally as knowledge of attacks on third persons or a reputation for violence. Put another way, the jury charge in cases involving a survivor of intimate partner violence, or any person who has been the target of the victim's prior acts of violence, should clearly convey that a victim's violent acts against the defendant are relevant in deciding if the defendant acted reasonably based on their subjective beliefs about the victim.
Accordingly, the CJI Committee and trial courts should consider the following charge language in cases involving intimate partners where a defendant alleges justification for their actions against the batterer-victim:
"In assessing whether the defendant did 'reasonably believe' that the deadly physical force [they] used was necessary to defend [themselves] from what they reasonably believed to be the use or imminent use of such force by [the victim] you may consider, if you so find, that [the victim] had previously violently attacked the defendant or that the defendant had knowledge that the victim threatened violence against them. You may consider to what extent, if at all, these violent acts or threats informed both the defendant's belief and whether such belief was reasonable."
"In making your assessment, the fact that the victim and the defendant were at the time (or previously) intimate partners is not a basis for discounting the threats or violent acts as less threatening to the defendant or less relevant to the defendant's 'reasonable belief' than if made by an acquaintance or stranger" (revisions italicized).
[*9]III.
The ultimate determination as to the proper charge is left, in the first instance, to the trial court, upon its consideration of the record evidence and counsels' arguments (see People v Newman, 46 NY2d 126, 130 [1978] ["(A) charge should do more than merely articulate the legal principles applicable to the case to be decided. Among other things, it should also focus attention on the specific factual issues raised by the evidence to which the principles are to be applied"]). Here, the justification charge to the jury was defective and defendant is entitled to reversal of her conviction and a new trial. But the error here, if repeated, may confuse jurors in future cases and, thus, reconsideration of past practice is warranted. Indeed, our legal system benefits from systemically reevaluating the instructions that guide the trier of fact, particularly when they prove confusing or outdated. The language I propose for the Committee and the Bench may avoid such confusion on how to assess the evidence of the victim's history of abuse as it relates to a defendant's justification claim.
Order reversed and a new trial ordered. Opinion by Judge Halligan. Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Troutman concur, Judge Garcia in a concurring opinion. Judge Rivera concurs in result in an opinion.
Decided June 17, 2025 

Footnotes

Footnote *:Judge Rivera proposes new language for a justification charge in cases involving intimate partners. Neither party has requested any such change, the question has not been considered by the Committee on Criminal Jury Instructions, and as noted, it is unnecessary for us to address the trial court's justification charge because we are reversing on other grounds. Accordingly, we need not opine on the language suggested by Judge Rivera's concurrence.

Footnote 1: While Judge Garcia disagrees that writing separately to propose modified jury instructions is prudent, his own decision to write separately to say so is odd (see concurring op at 1-4 [Garcia, J., concurring]). Despite his personal disagreement, he cites no caselaw or rule, nor could he, that expressly support his contention (see id.). And I am not the first to write in this vein (see 24 NY3d at 611 [Abdus-Salaam, J., concurring]).

Footnote 2: Notably, although the CJI is frequently revised, most recently in 2023, revisions to the language relevant to this appeal pre-date the legislature's response to the legal system's failures to account for the experiences of a survivor of intimate partner violence through the DVSJA in 2019 (see New York State Unified Court System, History of Criminal Jury Instructions and Model Colloquies, 
https://www.nycourts.gov/judges/cji/0-TitlePage/2-History.shtml [last accessed May 11, 2025]).